Roger SWOPE, Plaintiff,

v.

Lawrence BRATTON, Individually and Chief of Police of Camden, Arkansas; Robin Nix, Individually and Mayor of Camden, Arkansas; Edwin Horton, Individually and Member of City Board of Directors; John Dawson, Jr., Individually and Member of City Board of Directors; Gale Smith, Individually and Member of City Board of Directors; Mildred Mathis, Individually and Member of City Board of Directors; Thomas T. Slaughter, Individually and Member of City Board of Directors; William J. Cook, Individually and Member of City Board of Directors; Russ Crider, Individually and City Manager of Camden, Arkansas; Britt Williford, Individually and Member of Camden Police Department; the City of Camden, Arkansas, Defendants.

No. 78–1062.

United States District Court,
W. D. Arkansas,
El Dorado Division.

Feb. 4, 1982.

On Motion for Attorney's Fees
May 26, 1982.

[blacked out / redacted content]

David F. Guthrie, Guthrie, Burbank & Dodson, Bobby E. Shepherd, Spencer, Spencer & Shepherd, El Dorado, Ark., for plaintiff.

Ralph Faulkner, Faulkner, Goza & Rollins, Camden, Ark., John P. Gill, Gill, Skokos, Simpson, Buford & Owen, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

OREN HARRIS, Senior District Judge.

The plaintiff, Roger D. Swope, brought this action alleging his rights to due process were violated when he was disciplined on two occasions during his employment with the Police Department of Camden, Arkansas. He seeks declaratory relief, reinstatement to his former position with accompanying backpay, promotions, and seniority, monetary damages and punitive damages. Jurisdiction is alleged pursuant to 42 U.S.C. §§ 1983 and 1985 and the First, Fifth, and Fourteenth Amendments to the Constitution of the United States.

The defendants deny that any rights of the plaintiff secured by the Constitution and laws of the United States have been violated by the manner and means of the disciplinary actions taken against plaintiff.

Pursuant to regular schedule, and the parties having waived trial by jury, the matter came to be tried to the Court. The Court heard and received evidence from the plaintiff and the defendants. The parties rested and the matter was taken under advisement pending receipt of briefs by counsel for the parties. All briefs have now been received and the matter is ready for decision.

## JURISDICTION

Roger D. Swope is a resident citizen of Camden, Arkansas and a former member of the Camden Police Department. The City of Camden is a municipality of the first class organized pursuant to the laws of the State of Arkansas. Each of the named defendants is alleged to have acted individually and in their official capacities as Chief of Police, Mayor, City Manager, Police Officer, and Members of the Board of Directors of Camden, Arkansas.

█ Jurisdiction for 42 U.S.C. § 1983 is established pursuant to 28 U.S.C. § 1343(3). The complaint states a cause of action for a deprivation of rights protected by the Constitution and laws of the United States and that such deprivation was accomplished by the defendants under color of their duties pursuant to laws of the State of Arkansas.

The complaint also alleges a deprivation of rights under 42 U.S.C. § 1985. The Court finds no cause of action to exist for this section. There is no allegation of a conspiracy motivated by racial, or otherwise class-based, invidious discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 103, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Hence, this cause of action must be dismissed.

## FINDINGS OF FACT

The plaintiff, Roger D. Swope, was employed by the Camden Police Department May 1, 1974. He began his service as a uniformed patrol officer at Pay Grade 24, Step A. Swope remained in this position for one year before being transferred to the Detective Division. He was chosen over all other applicants for promotion to this position.

In May, 1976, Swope was promoted to the rank of Sergeant and returned to the Uniformed Patrol Division. He received the promotion even though he had been with the Police Department for only two years and six men in the department had more seniority. In addition, he was appointed a Field Training Officer in November, 1976.

Plaintiff has a Bachelor of Science Degree from Henderson State University plus some nine hours of police-oriented postgraduate study. He served in the United States Army as a military policeman. Swope's professional training includes the Arkansas Law Enforcement Recruit School and courses taught by various agencies such as the FBI and DEA.

The evidence reflects plaintiff Swope had advanced rapidly within the department and was establishing an excellent career record. Charles Walsh, a former patrolman with the Camden Police Department, stated that Swope was an excellent supervisor; he tried to keep the men together and promote their good spirits.

The personnel file of the plaintiff reflects that from 1974 until the fall of 1977, he received several commendations for various actions taken by him in the performance of his duties. The commendations refer to his devotion to duty and his willingness "to go the extra mile." A letter of commendation from Chief R. David Bentley, dated August 26, 1976, stated in part:

> I would like to take this opportunity to commend you for a job well done while assigned to the Detective Division ... Your dedication, devotion, and attention to duty resulted in narcotics arrests doubling within six months ... You never failed to go the extra mile in accomplishing your job and assisting the other personnel in accomplishing theirs ...

This excerpt is representative of the content of letters in his personnel file. In addition to letters from his superiors, there are letters of praise from citizens concerning official actions by Swope.

The plaintiff worked under two Chiefs prior to Chief Bratton. Nothing in the record reflects any trouble or conflict with either Chief Bentley or Chief Scott. Lawrence Bratton became the Chief of Police in July, 1977. The problems which gave rise to this lawsuit surfaced within five months after defendant Bratton became Chief of Police. These problems revolved around the plaintiff's private life and produced a situation which this Court can only characterize as a sad occurrence for all involved.

Roger Swope married Martha Marshall in 1971. Their marriage was not a happy one and was marked by several separations. In the summer of 1977, their problems reached a head. Martha left the plaintiff in early September and moved to Little Rock.

In September, plaintiff saw Ralph Faulkner, the city attorney, and requested that Faulkner represent him in the divorce proceedings; he asked that he file the divorce action. Faulkner accepted the case but told him that things would be smoother and less time consuming if the parties could agree to a property division. As a courtesy to Chief Bratton, Swope informed him that his wife had left and they were divorcing.

Later in September, Swope informed Chief Bratton he had played tennis with an employee of the department. Swope advised Bratton that they were only friends and he just wished to inform him in case any rumors surfaced. The woman was not named.

Roger and Martha attempted a reconciliation the first week in October. During this week, they tried to resolve their problems but to no avail. They mutually agreed to proceed with the divorce.

Roger Swope again saw Ralph Faulkner, informed him a reconciliation had failed, and requested he proceed with the divorce. Swope met with Chief Bratton for a third time and stated the divorce was proceeding. He also informed him he was seeing Diana Lewis. Chief Bratton told Swope he saw no problems if it was kept at a casual level.

At a later time, Bratton told the plaintiff he was concerned about the relationship and he would not permit anything which was more than casual. He stated he would not permit them to live together. Swope advised him there was no need for concern; the relationship would cause no problems.

The testimony reflects that through October, Diana Lewis, a divorced mother of two young children, dated several people including the plaintiff. Diana had begun working at the police department in July, 1977 as a dispatcher. She and the plaintiff did not begin to see each other until Martha

Swope moved to Little Rock. There is no evidence of any relationship between Diana and Roger which caused or contributed to the decision of Martha and Roger to divorce.

During November, the friendship between Diana and Roger deepened and became serious. In December, they made plans to marry as soon as his divorce was finalized. Upon inquiry of Ralph Faulkner, Roger was informed that it had not yet been filed. Mr. Faulkner explained he had been very busy, and there had been a secretarial mix-up which kept the matter from being filed. He advised Roger that since Christmas was approaching, the Courthouse would be closed and the matter should wait until the passage of the holiday season.

At this time, Roger and Diana were spending as much of their off-duty time together as possible. This was exceedingly difficult in December. Plaintiff was working the graveyard shift, that is 10 p. m. to 6 a. m. In addition, he was moonlighting as a security guard at a discount store; he was working from ten to sixteen hours per day. During December, Diana worked from 8 a. m. to 4 p. m. She also worked a number of extra shifts; many of these extra shifts occurred when Roger was scheduled to have a day off.

Diana Lewis and her two small children lived in a trailer at 452 Sycamore Street which was owned by her mother, Evelyn Boughten. Several prowler incidents occurred. These were reported to the police and investigated. The incidents scared the children and the oldest began having nightmares. Roger and Diana discussed the problem and he advised her to move. She said she was financially unable to move. They decided that she and the children would spend nights at his house on Jackson Street while he was at work. Roger had been baby-sitting for Diana; the children felt comfortable in the house. In addition, he had two Doberman Pinschers in his backyard and the children felt safe with the dogs right outside the window.

Two twin beds, some night clothes and toys were taken to Roger's house. Diana

and the children spent some six to ten nights in December at the Jackson Street house. The utilities remained connected at the trailer and the bills were paid by Diana. The children's pets (hamsters and cat) remained at the trailer. Meals were taken at the trailer.

In addition to spending nights at the Jackson Street house, Diana and her mother did laundry there. Roger had a washing machine and he gave Diana and her mother permission to use the machine. He had no dryer, but there was a clothes line in the backyard. Both women used the machine. Lieutenant Williford observed Diana, dressed in a housecoat, hanging clothes on the line and reported this to Chief Bratton.

During much of the fall of 1977, the plaintiff was without a car as his wife had taken their only vehicle. He borrowed Diana's car on several occasions. In December, he had it frequently and it could be seen parked at his house during the day when he was at home and at night when Diana and the children were there.

On January 2, 1978, Swope went to Chief Bratton and asked why he was the subject of an Internal Investigation. Chief Bratton stated he was being investigated for making derogatory remarks about Lt. Williford and Chief Bratton as well as for his living with Diana. Roger told him they were not living together.

In January of 1978, Roger and Diana were scheduled to be on the same shift. They discussed their living arrangements and it was decided that Roger would move into the trailer. This was fully accomplished by January 3, 1978.

The next meeting with Chief Bratton occurred on January 4 when plaintiff was called in by Bratton and again asked about his and Diana's living together. Plaintiff again denied the allegation and re-explained the situation. Bratton suggested he read the Rules and Regulations governing the Police Department.

Lieutenant Michael Paladino, the Commander of the Detective Division, handled the Internal Investigation. His report confirmed plaintiff's story (the prowler incidents, the use of Diana's car, Mr. Faulkner's handling of his divorce). Lt. Paladino concluded there was no physical evidence that Diana had abandoned the trailer.

On January 5, Chief Bratton drafted a letter in which he outlined the development of plaintiff's relationship with Diana. He enumerated items which could give the appearance of co-habitation. The letter stated in part:

> The evidence leads me to believe that your relationship with Ms. Lewis has in fact become more than just seeing each other. There is evidence that your divorce is not yet final and in fact to your own knowledge as of January 4, 1978, the formal proceedings have not yet been filed even though you state you have told your attorney to do so ... Your relationship with Ms. Lewis, not being married to one another, has placed the reputation of the City of Camden and the reputation of the Camden Police Department in jeopardy. This type relationship between members and employees of this department is neither ethical nor moral and will not be tolerated ... While your relationship with Ms. Lewis is not specifically described in detail in the Manual of Rules and Regulations, relationships such as yours are detrimental to the reputation of the City of Camden, the Camden Police Department and to you and Ms. Lewis ... The fact that you have allowed this relationship to grow into more than a casual affair after being specifically advised by me on three separate occasions that to do so could result in disciplinary action is interpreted as flouting the authority of a superior officer, the Chief of Police, and constitutes insubordination. Insubordination will not be tolerated by the Office of Chief of Police ...

There is conflicting testimony as to whether Chief Bratton discussed the letter and disciplinary action with the city attorney, Ralph Faulkner. In his deposition, Chief Bratton said he sought out the advice of the city attorney. He stated in the deposition that he discussed the whole situation, asked him

for advice and told him what he planned to do. He also stated that he knew Faulkner represented the plaintiff in his divorce. At trial, Bratton testified he did not discuss the letter with the city attorney until after the disciplinary action had been taken. The Court finds the testimony at trial to lack credibility. The Court specifically finds that Chief Bratton discussed the matter with the City Attorney and was apprised of the fact that he represented the plaintiff in his divorce proceeding.

The letter was finalized and dated January 6, 1978. Because of the findings, Chief Bratton disciplined the plaintiff by (1) reducing his rank from Sergeant (Pay Grade 27, Step B) to Patrolman (Pay Grade 24, Step E) and (2) Suspending him without pay for thirty days.

Plaintiff retained counsel and appealed the disciplinary action to the Civil Service Commission (Board of Directors). The appeal hearing was set for February 8, 1978 at 1:15 p. m. On February 2, plaintiff realized this was also the day he was scheduled to return to work. His counsel notified Ralph Faulkner, the city attorney, and requested that Roger be given an extra day either by extending the suspension or giving a day of leave. Faulkner indicated he would check. In the late afternoon of February 7, Chief Bratton called Swope and told him to report for work the next morning at 6 a. m. Swope stated it was his understanding arrangements had been made for him to have the day off to prepare for his hearing. Bratton stated he could not accommodate the request and directly ordered him to appear at 6 a. m. No assurances were given to the plaintiff that he would be allowed to leave work to attend his hearing.

Plaintiff consulted with his attorney, and on his advice, he did not appear for work on February 8. The defendants contend he did not appear for work because he did not wish to report as a patrolman. The Court finds that plaintiff's testimony that he needed the day to prepare for the hearing to be credible. Further, the hearing was extremely important to the plaintiff.

After commencing the Civil Service Commission hearing, the chairman turned it over to the city attorney, Mr. Ralph Faulkner. The hearing lasted until the early evening. The Commission affirmed the disciplinary action taken by Chief Bratton.

Prior to the adjournment of the hearing, counsel for plaintiff inquired about possible disciplinary action being taken against Swope for his failure to report to work that morning. Chief Bratton stated, "I don't think we will be faced with that problem, gentlemen. In fact, Chief Bratton had already written and signed a letter terminating the plaintiff's employment for not appearing for work on February 8.

On February 9, Swope reported to Chief Bratton. He was informed of Chief Bratton's intention to terminate him. It is undisputed that at that time Bratton gave him the option of signing a letter of resignation or being fired. Swope asked if he could consult with his attorney. Bratton said no. Swope refused to resign and Bratton fired him.

This disciplinary action was appealed. The Civil Service Commission, although stating the plaintiff had used bad judgment, reversed the termination decision and ordered Bratton to impose a more appropriate punishment.

Bratton then reduced the plaintiff to a patrolman at Pay Grade 24, Step A and suspended him for an additional 30 days without pay. He also stated "... should you become involved in any situation that would require me to take formal disciplinary action against you during the next twelve months, in all likelihood, that disciplinary action would consist of immediate termination."

An appeal was also taken on this disciplinary action. The Commission affirmed the action but modified it to allow a review of plaintiff's performance every sixty days. If his performance was adequate, he was to receive merit pay increases.

The plaintiff received no merit pay increases until January 14, 1979. Plaintiff remained with the Camden Police Depart-

ment until August 31, 1979. At the time of his resignation, plaintiff was at a Pay Grade 24, Step E.

The Court finds there was a bad relationship between Chief Bratton and the plaintiff. This bad relationship was apparently rooted in two incidents. One was an Internal Investigation conducted by Swope when he was in the Detective Division. Plaintiff was investigating one of Chief Bratton's (then a Sergeant) men. Plaintiff refused to disclose any details to Bratton even though Bratton "pulled rank" on him. Later when applications were being taken for the job of Chief, Swope took an application to Virgil Brown and urged him to apply. The record supports a finding that Chief Bratton disliked plaintiff and wished to terminate his services with the police department.[1]

Chief Bratton testified at the Civil Service Commission hearing that he had received complaints from outside of the department about the relationship of Roger and Diana. He refused to name the complaining parties. At trial, he stated he had received a couple of anonymous phone calls. The Court does not find any evidence in the record that there was a public uproar, outcry, or concern about the relationship of Roger and Diana.

Further, the Court does not find any allegation or any evidence in the record that the plaintiff did not perform his job in the same manner as previously noted. There is no evidence his relationship with Diana, whatever the extent, interfered with his performance in any manner. Charles Walsh testified the plaintiff's relationship with Diana did not cause a morale problem with the force. This testimony is found to be credible.

The Court finds that the disciplinary actions and subsequent harassments in the department made the plaintiff's employment situation untenable. This forced the plaintiff to resign on August 31, 1979.

The Court does not find any liability on the part of Lt. Williford. The Court finds he was working at the direction of Chief Bratton and does not find that any of his activities worked to deprive the plaintiff of a Constitutional right.

The Court further finds that there is no evidence that Mayor Robin Nix took any part in the activities which resulted in the disciplinary action and this lawsuit. Neither does the Court find that the City Manager, Russ Crider, has any responsibility for the deprivation of the plaintiff's Constitutionally protected rights.

■ The Court finds Chief Bratton, the City Board Members and the City of Camden to be responsible and liable for the deprivation of plaintiff's Constitutionally protected rights. The Court finds the individuals to have acted in their official capacities. The Court further finds there is no evidence of bad faith on the part of the individual defendants. The Court has found that Chief Bratton wished to be rid of the plaintiff. This does not prove, however, that he acted in bad faith in his actions toward the plaintiff.

## CONCLUSIONS OF LAW

■ The role of this Court is a limited one. This is not an appellate court for the review of administrative hearings as contended by the defendants. This Court, under the law, has the duty and responsibility to consider the record and determine the merits of the plaintiff's Constitutional claim. This Court has the responsibility to make a determination (1) whether, as a factual matter, he was disciplined by Chief Bratton for the exercise of his Constitutionally protected rights and (2) whether Swope was afforded due process of law. *Williams v. Day*, 553 F.2d 1160 (8th Cir. 1977); *Cooper v. Ross*, 472 F.Supp. 802 (E.D.Ark.1979). A review of the entire record forces the Court to conclude the plaintiff was disci-

---

1. Further evidence of this bad relationship can be seen in the disparate treatment given Swope and Lt. Williford. In December, 1978, Lt. Williford and his wife separated; he filed for divorce on December 16, 1978. It became final January 16, 1979. Lt. Williford remarried on January 19, 1979 after having dated while the divorce was pending. Although a note was placed in Williford's file, no disciplinary action was taken against him.

plined for the exercise of his Constitutionally protected rights and was denied due process of law.

■ Police officers are possessed of and entitled to enjoy the same Constitutional rights and privileges that all other persons in the United States possess and enjoy. *Smith v. Price*, 446 F.Supp. 828 (M.D.Ga. 1977), rev'd on other grounds, 616 F.2d 1371 (5th Cir.). The Constitution affords a right of privacy, *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and a right of association with other persons for a variety of purposes. *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Chief Bratton forbade the plaintiff to develop a more than casual relationship with Diana Lewis. The disciplinary letter of January 6, 1978 also states that he had come to the conclusion the plaintiff and Diana Lewis were living together.

■ The Court is of the opinion the interest plaintiff asserts involving his relationship with Diana is one that is within the "zone of privacy." The Supreme Court has not completely and exhaustively articulated the kinds of interest protected by the zone of privacy. There are matters, however, which fall within a protected zone of privacy simply because they are private. These constitute areas where the government has no legitimate interest.

■ An officer has a right to a private life free from intrusion unless it interferes with his work performance or the efficiency of the governmental service. Municipalities may not require employees to give up their Constitutional rights as a condition of obtaining or continuing public employment unless there is a justification for doing so. *Smith v. Price*, supra. The Court would agree that the police department has an interest and may investigate some areas of the personal sexual activities of its employees *if* the activities have an impact upon job performance. In the absence of a nexus between the personal, off-duty activities and poor job performance, inquiry into these activities violates the Constitutionally

protected right of privacy; a party's private sexual activities are within the "zone of privacy" and protected from unwarranted governmental intrusion. See, *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); *Griswold v. Connecticut*, supra.

... this protection is by no means absolute. For example, if the sexual activities of a public employee were open and notorious, or if such activities took place in a small town, the public employer might very well have an interest in investigating such activities and possibly terminating an employee. See *Sullivan v. Meade Independent School District*, 530 F.2d 799 (8th Cir. 1976); cf. *Hollenbaugh v. Carnegie Free Library*, 436 F.Supp. 1328 (W.D.Pa.1977), aff'd without opinion, 578 F.2d 1374 (3d Cir. 1978). In such a case, the actions of the public employee with respect to his or her private life could be deemed to have a substantial impact upon his or her ability to perform on the job... While the state arguably has a greater interest in regulating the conduct of its employees than that of citizens in general ... that interest arises from concerns relating to the proper functioning of the particular employing entity... To the extent that an officer's private life impacts upon these legitimate needs, then, the Police Department would have an interest in regulating, and concomitantly, investigating such activities. *Shuman v. City of Philadelphia, et al.*, 470 F.Supp. 449, 459–461 (E.D.Pa.1979); See also, *Clark v. Mann*, 562 F.2d 1104 (8th Cir. 1977); *Drown v. Portsmouth School District*, 451 F.2d 1106 (1st Cir. 1971); *Battle v. Mulholland*, 439 F.2d 321 (5th Cir. 1971); *Smith v. Price*, supra; *Norton v. Macy*, 417 F.2d 1161 (D.C.Cir.1969); *Bonet v. United States Postal Service*, 661 F.2d 1071 (5th Cir. 1981); *Doyle v. The Veterans Administration*, 667 F.2d 70 (U.S.Ct.Cl.1981).

■ The Court must emphasize that the "zone of privacy" is much smaller for public officers than it is for the average

citizen. It is well-known that public officers are subject to close scrutiny. The respect and confidence of the public is essential to the performance of a job such as that held by Swope. However, public officers are entitled to a private life free from intrusion. In this particular case, the Court cannot conclude that Chief Bratton had a right to order Roger Swope to refrain from developing a "more than casual relationship" with Diana Lewis.

A close and careful scrutiny of the evidence reveals no "open and notorious" relationship between Roger and Diana. Indeed, even the internal investigation did not confirm that the parties were living together. The relationship certainly could not be considered notorious or flagrant. There is no evidence of a public outcry; there is no documentation of any complaint by any citizen.

Further, there is no testimony that the plaintiff failed to perform his job. Charles Walsh stated the plaintiff continued in his job as he always had. His relationship with Diana in no way affected the every day mechanics and performance of the Camden Police Department. The efficiency of the Department was not affected.

 Because of these findings, the Court must conclude the plaintiff was disciplined for the exercise of his Constitutional rights in developing a private relationship of which the Chief of Police disapproved.

 The Court further finds the plaintiff was denied due process at the hearings on the disciplinary action. Plaintiff had served for three years and eight months as a police officer for the Camden Police Department, and as previously stated, had advanced to the rank of Sergeant. The Rules and Regulations for the Camden Police Department state that the tenure of office lasts only during good behavior. Section 700.2. Disciplinary action may be taken for immoral conduct. Under § 777, appeals may be taken to the Civil Service Commission. As long as a "good behavior" is maintained, a police officer has a reasonable expectation of continued employment.

The Court, therefore, finds and concludes that the plaintiff had a property interest in his employment with the Camden Police Department which could not be divested without due process of law. *Parks v. Goff*, 483 F.Supp. 502 (E.D.Ark.1980). This interest in his employment extends to not only termination but also to disciplinary action. In this instance, the reduction in rank was in essence a discharge, a discharge from his position as a sergeant with its attending privileges and responsibilities. Further, the plaintiff was entitled to due process in that he had a liberty interest involved. Deprivation of a liberty interest occurs where discipline or discharge imposes a stigma upon future employment. *Clark v. Mann*, supra. Being severely disciplined for insubordination and immoral conduct would certainly impose a stigma upon plaintiff's future employment in the law enforcement field.

There is no dispute in this case that plaintiff requested a hearing. This hearing, however, did not afford the plaintiff due process of law. Basically, the Court finds and concludes it was deficient for more than one reason.

The evidence in the case reflects that Chief Bratton, by his refusal to allow the plaintiff to miss work on the day of the hearing, attempted to interfere with plaintiff's preparation for the hearing and consultation with his attorney. While the Court will not go so far as to say Bratton would have attempted to prevent his attendance, there are certainly no assurances in this record that it would have been permitted.

 The right to retained counsel in a civil matter is implicit in the concept of Fifth Amendment due process. *Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932). " . . . an analogy can be drawn between the criminal and civil litigants' respective rights to counsel. In both cases the litigant usually lacks the skill and knowledge to adequately prepare his case, and he requires the guiding hand of counsel at every step in the proceedings against him." *Potashnick v. Port City Construction Co.*, 609 F.2d 1101, 1118 (5th Cir. 1980).

The need for attorney-client communication is present in a civil case. Plaintiff had the right to meet with his attorney in preparation for his hearing. The refusal to allow the time off was an attempt to impinge on his right to consult with counsel. Further, the right to a hearing encompasses the right to a meaningful hearing. *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Preparation and consultation with one's attorney are concomitants to a meaningful hearing.

At the hearing, Chief Bratton testified he had demoted the plaintiff for failure to cease immoral conduct. He stated he had been approached by two or three people outside of the Department. Counsel attempted to elicit the names of the complaining parties and other pertinent data. The Commission refused to allow questioning in this area.

No person was brought forward to substantiate the charges. Lt. Paladino's report on the internal investigation was not introduced, nor was it provided to plaintiff. In short, the plaintiff was not allowed to confront his accusers or those who had supposedly supplied the information to Chief Bratton. At trial, Chief Bratton stated the complaints came from anonymous phone calls. Development of this evidence was highly pertinent. The Court concludes the curtailment of testimony with regard to public accusations was violative of due process. *Parks v. Goff*, supra.

The area which is most troublesome to the Court concerns the conduct of Ralph Faulkner, the city attorney. Mr. Faulkner was retained by plaintiff to represent him in his divorce action. He was somewhat dilatory in filing the complaint and processing the case.[2] This same attorney, being informed by the plaintiff of his need and desire for a divorce, and being consulted by Chief Bratton concerning disciplinary action for immoral conduct *of his client*, served as the hearing officer for the Civil Service Commission. The Court concludes there was a conflict of interest of the highest order.

The defendants point out, and correctly so, that no objection to Ralph Faulkner's participation was made at the Civil Service Commission hearing. They assert that any procedural problem or conflict has therefore been waived. They strongly object to this being raised sua sponte by the Court. The Court feels, however, that the conflict is so egregious that it certainly contributed to the denial of due process.

■■■ The Court fully understands that plaintiff had the right to object and did not do so. The Court concludes, however, that the city attorney should have disqualified himself. He had a present and on-going attorney-client relationship with Roger Swope. There was a substantial relationship between the subject matter of his retention by Swope and the matter he was handling for the City of Camden. *City of Cleveland v. Cleveland Electric Illuminating Co.*, 440 F.Supp. 193, 209 (N.D.Ohio 1977). The Court feels it was incumbent upon Mr. Faulkner to make his conflict known to the Board. An attorney should disclose joint representation and the consequences of it to all clients and all parties. *E. F. Hutton and Company v. Brown*, 305 F.Supp. 371 (S.D.Tex.1969). The better action would have been for him to have disqualified himself. The general rule in disqualification cases has been that when there is proof of a former attorney-client relationship concerning substantially related matters, disclosure of confidences is presumed. *T. C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F.Supp. 265, 268 (S.D.N.Y.1953). Here, as noted, Faulkner had on-going relationships with both parties. The duty of attorneys to not represent conflicting interest is based upon the public need for confidence in the profession and the judicial system. *E. F. Hutton and Company v. Brown*, supra. Further a lawyer who is representing one person cannot fairly undertake to advise an opposite par-

---

**2.** Once the divorce complaint was filed, Swope secured his divorce within two months. Diana and Roger were then married on March 3, 1978.

If Mr. Faulkner had filed the complaint in early October, it is very likely the divorce would have been final before Christmas, 1977.

ty. *W. T. Byrns, Inc.*, 260 F.Supp. 442 (E.D.Va.1966).

The Court concludes this conflict of interest certainly adds to the picture of denial of due process. Because no objection was made, the Court will not go so far as to say this situation alone was a denial of due process. However, it certainly gives the strong appearance of impropriety and fundamental unfairness.

■ The Court must also note that the second disciplinary action taken was violative of plaintiff's Constitutional rights. As already noted, plaintiff had the right to meet with his attorney and prepare for the hearing. In order to exercise this right, Swope was forced to miss work. The subsequent disciplinary action for this was unlawful.

■ Because the Court has found the acts were done in good faith, the municipality is responsible for any damages. A municipality is a "person" under 42 U.S.C. § 1983. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 11 (1978). The good faith of the individual city officers does not provide immunity to the municipality. *Owen v. City of Independence, Missouri*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

### REMEDY

Having found the plaintiff was disciplined for the exercise of Constitutionally protected rights and was denied due process of law, the Court must proceed to determine a remedy. The evidence at trial showed that the disciplinary action cost the plaintiff $3,400.30 in lost wages. This amount will be paid to the plaintiff.

The Court further orders the City of Camden and the individuals to note in all records concerning the plaintiff that the discipline was wrongful and unwarranted. The records should properly reflect that plaintiff was wrongfully charged with insubordination and immoral conduct.

The defendants are further instructed to immediately offer the plaintiff reinstatement to the job which he held prior to the first disciplinary action. The reinstatement is to be offered with full seniority rights and all other attending benefits. He should be offered reinstatement at the Pay Grade and Step at the level he would have been had the disciplinary actions not occurred. Plaintiff should also be restored to his position as a Field Training Officer.

■ Although plaintiff has requested compensatory and punitive damages, the Court does not feel they are warranted in this case. The Court further finds an award of attorneys' fees is appropriate. The Court encourages counsel for the parties to amicably settle this award. If this is not possible, then counsel for the plaintiff will submit to the Court an itemized statement of the hours expended in the preparation and trial of this case.

The costs of the litigation will be borne by the defendants.

The findings of fact and conclusions of law are incorporated herein pursuant to Rule 52 of the Federal Rules of Civil Procedure.

A separate judgment will be entered in accordance with this opinion.

### ON MOTION FOR ATTORNEYS' FEES

The Court has for consideration in this action motion for attorneys' fees and costs filed by counsel for the plaintiff on March 4, 1982, supported by brief, affidavits by the Honorable David F. Guthrie and the Honorable Bobby Shepherd, attorneys for plaintiff. The motion is resisted by the Honorable Byron Freeland, of Mitchell, Williams & Selig, and the Honorable Ralph Faulkner, of Faulkner, Goza & Rollins, attorneys for the city of Camden, Arkansas, supported by brief filed April 2, 1982. Also in support of objections on behalf of the city of Camden, affidavits are included by both Mr. Rainwater, who represented the defendant in the trial of this civil rights action, and by Mr. Freeland.

Attorneys for the plaintiff have filed a reply brief, and the issues are submitted to the Court for decision.

In this action the plaintiff, Roger Swope, claimed that his rights to due process were violated when he was disciplined on two occasions during his employment with the Police Department of Camden, Arkansas. He sought declaratory relief, reinstatement with the Police Department, back pay, promotion, monetary and punitive damages. He filed this action based upon 28 U.S.C. §§ 1343(a)(3), 42 U.S.C. §§ 1983 and 1985, and the First, Fifth and Fourteenth Amendments to the Constitution of the United States.

After a trial to the court and opportunity for briefs to be filed by counsel for the parties, the Court concluded that the plaintiff was unlawfully disciplined which resulted in his separation with the Police Department of the city of Camden, Arkansas. The Court entered judgment for the plaintiff as compensation for lost wages, for reinstatement to the position held prior to the first disciplinary action with full seniority rights and all other benefits to which he was entitled.

The judgment also included that the costs for the litigation and attorneys' fees were to be borne by the defendants. However, the court concluded that the individual defendants acted in their official capacities and the evidence failed to establish "bad faith" on the part of the individual defendants and that the actions of the individual defendants, as employees of the defendant city of Camden, did not provide immunity for the municipality. Therefore, the city of Camden is responsible for the back pay, attorneys' fees, and costs.

Having considered the record in conjunction with the testimony, exhibits, and briefs, and being otherwise fully advised in the premises, the Court enters the following order.

■ As amended by the Civil Rights Attorneys' Fees Award Act of 1976, 42 U.S.C. § 1988 provided in pertinent part that:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Considering the decision of the Court in its memorandum opinion and Judgment entered in this action, the Court is satisfied that the plaintiff may be deemed prevailing party pursuant to 42 U.S.C. § 1988. *Oldham v. Ehrlich*, 617 F.2d 163, 168 (8th Cir. 1980). Once the plaintiff has won success on a single substantial claim, he qualifies as a prevailing party. *Oldham v. Ehrlich*, supra, n. 9, at page 168. Discerning no special circumstances which would render an attorney's fee award unjust in this case, the Court shall proceed to an analysis of plaintiff's right to the fee requested under the guidelines set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974), and expressly adopted by the Eighth Circuit. *Ladies Center, Nebraska, Inc. v. Thone*, 645 F.2d 645, 647 (8th Cir. 1981); *Doe v. Poelker*, 515 F.2d 541, 548 (8th Cir. 1975), appeal after remand, 527 F.2d 605 (8th Cir. 1976), rev'd on other grounds, 432 U.S. 519, 97 S.Ct. 2391, 53 L.Ed.2d 528 (1977).

■ As pointed out in the well-reasoned brief by counsel for the plaintiff, under *Johnson* the following schedule must be evaluated in computing the proper amount of an attorney's fee award: (1) the time and labor required, (2) the novelty and difficulty of the question, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and results obtained, (9) the experience, reputation and ability of counsel, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 717–719. *Zoll v. Allamakee Community School District*, 588 F.2d 246, 252 n.11 (8th Cir. 1978).

As a general rule, the Court should award the number of hours claimed multiplied by the attorney's regular hourly rate. *Ladies Center, Nebraska, Inc. v. Thone*, 645 F.2d at 647. In this regard, however, the Court retains the discretion to tailor the hourly rate to be paid to the skill and experience of counsel, and to calculate the number of hours necessary to organize and litigate a case such as the one at bar. *Brown v. Bathke*, 588 F.2d 634, 638 (8th Cir. 1978). Thus, if the Court should find that an amount less than the total sum of the attorney's customary rate multiplied by the number of hours claimed is appropriate under the criteria enumerated in *Johnson*, it may reduce the award sought provided that the basis for such a reduction is articulated. *Robinson v. Moreland*, 655 F.2d 887 (8th Cir. 1981); *Ladies Center, Nebraska, Inc. v. Thone*, 645 F.2d at 647.

Applying the twelve factors outlined above, the Court will first determine the number of hours expended and in what manner, and then place a value upon such services. Finally, this initial or "lodestar" figure will be adjusted to take into account the remaining *Johnson* factors.

### TIME EXPENDED

As itemized in their affidavits, Messrs. Guthrie and Shepherd's services during the discovery, processing, and trial to the present are as follows:

| | Services | Hours |
|---|---|---|
| Guthrie | Total time requested | 289.95 |
| Shepherd | Total time requested | 118.60 |
| Guthrie | Adjusted time served | 238.35 |
| Shepherd | Adjusted time served | 118.00 |
| Guthrie | In-court time | 16.50 |
| Shepherd | | 14.50 |
| Guthrie | Out-of-court time (legal) | 61.75 |
| Shepherd | | 82.00 |
| Guthrie | Out-of-court time | 160.10 |
| Shepherd | (nonlegal or clerical) | 21.50 |
| Guthrie and Shepherd | Total time served as adjusted | 356.35 |
| Guthrie | Out-of-court | 10.25 |
| Shepherd | supplemental time (legal) | 5.70 |

After reviewing the affidavits delineating the time expended and adjustments, together with the hourly rate sought, the Court is of the opinion that the hours expended in discovery, client consultation, trial preparation, and trial are reasonable. Furthermore, recognizing that the time expended in establishing plaintiff's entitlement to attorneys' fees is includable in a fee award, *Manhart v. City of Los Angeles*, 652 F.2d 904, 909 (9th Cir. 1981); *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir. 1978), the Court, nonetheless, is persuaded that a reduction in the number of hours consumed in the itemization of fees and the drafting of the motion for attorneys' fees is appropriate. It is quite clear that a major portion of the hours claimed was expended in itemizing costs and services. The Court is also reducing slightly the hours requested for efforts made in securing the fee award, based on the relative simplicity of the issue and counsel's somewhat limited experience in this area. See *Davis v. Reagen*, Civil No. 78–106–D, slip. op. at 2 (S.D.Iowa, filed April 22, 1981).

### VALUE OF SERVICES

Counsel for the plaintiff have requested an award of $24,507.00 representing request of a total of 408.45 hours in representation of the plaintiff at a reasonable hourly rate of compensation of $60 per hour. Additionally, counsel includes an itemized statement of costs in the sum of $1,228.61. There is no challenge raised by the defendants to any element of the costs plaintiff alleges were incurred in litigating the case; the Court finds such costs to be reasonable and is, therefore, awarding them as a part of the plaintiff's attorneys' fees.

Upon careful consideration of the twelve factors bearing on a judicial assessment of a fee award, the Court concludes that a reasonable fee for the hours of labor in this action should be calculated at the following rates:

| | | |
|---|---|---|
| In-Court work | 31 hours at $60 = | $1,870.00 |
| Out-of-Court work | 143.75 hours at $50 = | $7,187.50 |

Legal

| Nonlegal or Clerical work | 181.60 hours at $35 = | $6,356.00 |
|---|---|---|
| Supplemental time (legal) for research and briefs in securing the fee award | 15.95 hours at $50 = | $ 797.50 |
| Costs incurred | | $1,228.61 |

Among the factors influencing the Court's decision are: (1) the time and labor to prosecute this case was substantial, due to the nature of the case; (2) the legal questions involved were neither novel nor complex, although the facts were relatively complicated; (3) the requisite skill necessary to perform the legal services was no more than ordinary skill; (4) the attorneys, Messrs. Guthrie and Shepherd, stated in their affidavits the time devoted to the litigation, which caused them to fall behind in other pending matters; (5) no severe time limitations were imposed, either by plaintiff or the circumstances presented throughout the period required in processing the case; (6) the litigation was somewhat undesirable, and the Court was well aware that there were demands imposed on the experience and resources in the context of client relationship; (7) the hourly rates requested by the attorneys, as reasonable, were $60 in court. The Court concludes that this is a proper charge for in-court time. The Court is of the opinion that for out-of-court legal work $50 an hour is reasonable in this area. For nonlegal or clerical work out-of-court $35 an hour is reasonable; (8) plaintiff was awarded significant relief by the decision of the court on the merits; (9) although the attorneys had little experience in civil rights litigation, they have had substantial experience in trial litigation and gained substantial experience and skill sufficient to be considered as able attorneys.

## ADJUSTMENT OF MINIMUM STATUTORY FEE

In this action counsel have made a request for an incentive award or enhancement as included with the contingency factor outlined in *Johnson*, supra, bearing in mind that the fundamental purpose of § 1988 is to provide remuneration adequate to attract competent counsel to civil rights suits, thereby affording citizens "a meaningful opportunity to vindica'ᵧ important congressional policies which these laws contain," S.Rep.No.94–1011, 94th Cong. 2d Sess. 1976, reprinted in [1976] U.S.Code Cong. & Admin.News, pp. 5908, 5910, the Court has considered such an award in the instant case and concludes that it would be inappropriate and unreasonable under the circumstances of the case.

The adjustment the Court has made as included hereinabove conforms to the standards as noted in *Johnson v. Georgia Highway Express, Inc.*, supra, and expressly adopted by the Eighth Circuit, *Cleverly v. Western Electric Co., Inc.*, 450 F.Supp. 507 (W.D.Mo.), affd. at 594 F.2d 638 (8th Cir. 1979). Traditionally in this area in-court service is entitled to a greater award per hour as reasonable than the rate provided for out-of-court service and nonlegal or clerical service. The Court adopts this rule as reasonable in this case.

Further adjustments are made necessary in that Mr. Guthrie has included 47 hours for time served on behalf of plaintiff in administrative hearings before local Civil Service Commission. In his affidavit Mr. Guthrie explains a fee arrangement he had with the plaintiff, Roger Swope, and payment of the sum he received in partial compensation for such services. The Court concludes that it is reasonable that the service Mr. Guthrie rendered Mr. Swope prior to the services for filing of this lawsuit is an arrangement between them and, therefore, not subject to charge in this litigation. The Court has, therefore, reduced the time claimed for service in connection with the administrative proceeding prior to the development of this case. There were slight adjustments made in the itemizations of both attorneys which the Court has also found necessary. In Mr. Guthrie's itemization he claims 289.95 hours. In the Court's calculation the itemized total is 285.35

hours. In adjustment of Mr. Shepherd's itemization it is noted that there was a slight difference of one-half hour.

 Therefore, the Court approves as reasonable attorneys' fees the sum of $15,-403.50 for services in connection with the discovery and trial of the case, together with $797.50 for legal services in connection with the attorneys' fees. Additionally the Court includes as costs sums advanced and itemized by counsel. The total sum approved by the Court as attorneys' fees and costs in the case is $17,429.61.

For the foregoing reasons IT IS, THEREFORE, ORDERED AND ADJUDGED that the plaintiff have and he is hereby awarded attorneys' fees of $16,201.00 together with costs incurred in the sum of $1,228.61. The total award is $17,429.61.