Sam **DUCKWORTH, Plaintiff-Appellant,**

v.

**Homer E. SAYAD, et al.,
Defendants-Respondents.**

No. 46547.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 27, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 1984.

Application to Transfer Denied
June 19, 1984.

C. John Pleban, St. Louis, for plaintiff-appellant.

David O. Danis, St. Louis, for defendants-respondents.

KAROHL, Presiding Judge.

Plaintiff-appellant Sam Duckworth, a police officer of the City of St. Louis, requested a review under Chapter 536 RSMo 1978 of his discharge as punishment for violation of Rule 7, § 7.010(c) of the Police Manual. The rules were authorized by § 84.170.2 RSMo 1978 and published by respondent Board of Police Commissioners in furtherance of its duties as defined in § 84.090. Rule 7 describes Complaint and Disciplinary Procedures and § 7.010(c) provides *inter alia:*

7.010 Standards of Conduct—

Every member of the department shall, at all times, maintain reasonable standards of courtesy in their relations with the public and with other members of the department and shall conduct themselves in such a manner that no discredit will be brought upon the department, in general or themselves in particular.

Acts contrary to good conduct shall include, but not be limited to, the following:

(c) Any conduct unbecoming a member of the department.

The trial court held that the findings and decisions of the Board were based upon competent and substantial evidence and affirmed.

We review the decision of the Board. The issue is whether it is supported by competent and substantial evidence or whether it is so arbitrary as to be an abuse of discretion. *Worley v. Whaley*, 586 S.W.2d 721, 722 (Mo.App.1979).

Appellant contends that the charge is either in itself unconstitutionally vague and, if not, that its application on the facts of this case is unconstitutionally impermissible.

The Board's decision is a response to an amended charge and specification that appellant, on July 27, 1979, while in a fourth floor dormitory room on the campus of Michigan State University in East Lansing, Michigan, engaged in a sexual act with an unnamed female contrary to the good order and discipline of the department. Appellant testified and denied the charges.

The amended charge was filed on November 30, 1980 after the first of two days of hearings was held on September 25, 1980. The original charge specified that the act involved a sixteen-year old female who was in appellant's charge as an advisor to a youth group. However, the evidence on the first day of the hearing indicated that the female's age and identity was unknown.

We find the amended charge neither unconstitutionally vague per se, *Milani v. Miller*, 515 S.W.2d 412, 416 (Mo.1974); *Vorbeck v. Schnicker*, 660 F.2d 1260, 1267 (8th Cir.1981), *cert. denied*, 455 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462 (1982), nor as applied to this case. There is a rational connection between the Board's § 84.420 duties, the regulation and this charge regulating a police officer's sexual misconduct, if there is a public visibility of such conduct or if such exposure becomes public domain by an act of the police officer. This conduct may so wound the police department as to hinder the performance of the Board's duties. Appellant must demonstrate that there is no rational connection between the regulation and the promotion of safety of persons and property. *Vorbeck*, 660 F.2d at 1266. Accordingly, the amended charge and specifications will survive constitutional challenge only because, as pleaded, there may be evidence proving the act and its public visibility.

Neither the United States Constitution nor the Constitution of the State of Missouri explicitly or expressly state a "right to privacy." This right has been recognized

and developed by case law. A wealth of cases handed down by the Supreme Court indicate that specific guarantees in the Bill of Rights have penumbras formed by emanations from those guarantees that give them substance. *Griswold v. Connecticut,* 381 U.S. 479, 484, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965). The Supreme Court relied upon the Fourth Amendment in *Boyd v. United States,* 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886); and *Mapp v. Ohio,* 367 U.S. 643, 656, 81 S.Ct. 1684, 1692, 6 L.Ed.2d 1081 (1961). In *Boyd,* the court described protection against all governmental invasions "of the sanctity of a man's home and the privacies of life." 116 U.S. at 630, 6 S.Ct. at 532, and in *Mapp v. Ohio,* the court interpreted the Fourth Amendment as creating a "right to privacy" no less important than any other right carefully and particularly reserved to the people. 367 U.S. at 656, 81 S.Ct. at 1692. In *Griswold,* as explained by Justice Goldberg's concurring opinion, the court relied upon the Ninth Amendment and concluded that its purpose was to include those fundamental rights that have not been enumerated in the first eight amendments. "[T]hat the concept of liberty ... embraces the right of marital privacy though that right is not mentioned explicitly in the Constitution is supported both by numerous decisions of this Court, referred to in the Court's opinion, and by the language and history of the Ninth Amendment." *Griswold,* 381 U.S. at 486–487, 85 S.Ct. at 1682–1683.

■ The right to privacy has some extension to marriage related activities.[1] However, the underlying right of privacy "is the right of the *individual,* ... to be free from unwarranted governmental intrusion ...." *Eisenstadt v. Baird,* 405 U.S. 438, 452, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349 (1972). The ·right to privacy is not limited to the marital relationship but encompasses the right of the individual to privacy regardless of marital or nonmarital sexual conduct. *Id.*

Although no Missouri authority has been cited and we have found no authority in Missouri determining the application or limitation of the fundamental right of privacy of police officers other jurisdictions have addressed the issue. The issue in *Swope v. Bratton,* 541 F.Supp. 99 (W.D. Ark.1982) was similar to the present case. That court held that in the absence of a nexus between the personal off duty activities and poor job performance, investigation of sexual activities violates the constitutionally protected right of privacy. *Id.* at 108. An officer has the right to a private life free from governmental intrusion unless it interferes with job performance or department efficiency. Police officers are possessed of and entitled to enjoy the same constitutional rights that all others in the United States enjoy. *Smith v. Price,* 446 F.Supp. 828, 833 (M.D.Ga.1977), *rev'd on other grounds,* 616 F.2d 1371 (5th Cir. 1980).

■ The police officer's constitutional right to privacy therefore requires the Board to prove the public visibility or involvement resulting from his actions.

Appellant contends that the Board failed to support the charge by substantial and competent evidence and particularly that the alleged misconduct was wholly within a place where appellant was constitutionally protected by a zone of privacy.

The decisive issue is whether or not respondents proved, by substantial and competent evidence, that the misconduct occurred and whether it was conduct having a visible public character.

The relevant evidence before the Board was as follows: Appellant and other police

---

1. *Loving v. Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967). The privacy right also has some extension to activities relating to procreation, *Skinner v. Oklahoma,* 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942); contraception, *Eisenstadt v. Baird,* 405 U.S. 438, 453–54, 92 S.Ct. 1029, 1038–39, 31 L.Ed.2d 349 (1972); child rearing and education, *Pierce v. Society of Sisters,* 268 U.S. 510, 535, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925), *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923); and abortion, *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

officers accompanied a youth group to East Lansing, Michigan to attend a national conference lasting approximately five days. They stayed in university dormitory housing. Appellant occupied a room on the top floor of a four-story dormitory building. Next to his room, at the end of the hall and the building, was an open balcony on his side of the hall with a closed stairwell on the opposite side of the hall. Two fellow officers testified that they, like appellant, were advisors for the group and that they saw appellant enter his room at 1:45 a.m. in the company of an unidentified female. Shortly thereafter the officers walked the length of the hall, passed appellant's room, and went outside on to the balcony. Nearly all of the balcony was separated from appellant's room by a wall, three lengths of brick wide. The balcony did not extend along or in front of the room but it was possible from the outside corner of the balcony, immediately next to appellant's room, to look around the wall and into the room. Such view would be available only to one person standing on the outer edge of the balcony and immediately next to the room occupied by the appellant. The venetian blinds of the window in appellant's room were down but the shades open. The Board's exhibit pictures and diagrams indicate that a line of sight into the room would be physically possible only as described. The Board made no finding as to whether or not activities within the room could have been seen accidentally. It found that only one of the two officers saw appellant seated on a chair involved in a sexual act with an unidentified female. He then invited the second officer to so position himself as to observe the activity.

■ The Board's evidence describes a college dormitory room where a lawful occupant is entitled to expect a constitutionally guaranteed right of privacy at 1:45 a.m. in the morning. The dormitory room served as both a bedroom and a study room. The room was located on the top floor of the building. There was no public outcry or complaint filed by a citizen. Such activities as may have occurred within the dormitory room, considering the evidence and all inferences to be drawn from the evidence were unlikely to have any public visibility or to become publicly known. Such misconduct, if it occurred, was within an area where appellant had a constitutional right to expect privacy.

■■ Accordingly, whether or not the evidence supports the Board's findings of misconduct, visible from a single and remote vantage, it does not support a finding that the acts described were publicly visible or likely to become publicly known and thereby subject to regulation by Board rules. Any private misconduct, whether occurring in St. Louis or in Michigan, may be reprehensible if not criminal. However, it is not properly a subject to be regulated by the Board in furthering the discharge of its statutory duties. Such private activities do not establish the requirement of a nexus between the activities and either poor job performance or reputation and integrity of the department. *Swope v. Bratton*, 541 F.Supp. 99, 108 (W.D.Ark.1982). We therefore hold that the charge is not supported by substantial and competent evidence under the circumstances subject to regulation by Rule 7.010(c). *Worley v. Whaley*, 586 S.W.2d 721, 722 (Mo.App.1979).

We reverse and remand to the circuit court with direction that the appellant be found not guilty of the charge and that he be reinstated as a police officer with appropriate benefits from the date of suspension or discharge.

REINHARD and CRANDALL, JJ., concur.