**Charles W. JACKSON, Plaintiff,**

v.

**Willie R. HOWELL, and the City of Muskegon Heights, Defendants.**

**No. G81–719 CA6.**

United States District Court,
W.D. Michigan, S.D.

Dec. 27, 1983.

Timothy G. Holland, Hankins & Kluck, Okemos, Mich., for plaintiff.

Michael M. Knowlton, O'Toole, Stevens, Johnson, Knowlton, Potter & Rolf, Muskegon, Mich., for defendants.

## OPINION

BENJAMIN F. GIBSON, District Judge.

This is a civil rights action brought pursuant to 42 U.S.C. § 1983. The plaintiff, a lieutenant in the Muskegon Heights Police Department, alleges that the defendants [1] violated his rights of free speech, privacy, and association when they investigated, and subsequently suspended and demoted him because of, certain on and off duty conduct. The matter was tried to the Court and this Opinion shall constitute the Court's findings of fact and conclusions of law. Rule 52(a), Fed.R.Civ.P. Because of the nature of the plaintiff's claim, a somewhat detailed recitation of the facts is necessary.

On July 20, 1981, the plaintiff was the shift commander on duty when Diane Eshmawi was referred to him by the department's clerk. Ms. Eshmawi sought police assistance to report that she was being harassed by a former boyfriend. The plaintiff filled out an incident report, told Ms. Eshmawi that he would personally investigate the situation, and suggested that she call him later in the day for an update. When she called, the plaintiff informed her that he had been unable to contact her former boyfriend; the plaintiff then arranged to visit Ms. Eshmawi at her apartment after he went off duty that evening. The visit was to be for social purposes, as well as to inform Ms. Eshmawi of the status of the investigation.

The plaintiff visited Ms. Eshmawi that night after he went off-duty and remained for several hours. During the course of the visit, there was no discussion of the investigation, but the plaintiff and Ms. Eshmawi engaged in consensual sexual intercourse. Within the next few days, the plaintiff visited Ms. Eshmawi on one other occasion. This second visit, during which the plaintiff and Ms. Eshmawi engaged in intercourse, was also arranged by the plaintiff while he was on duty.

Several days later, defendant Howell was contacted by a woman who expressed some concern for her safety because she had been having an affair with an unnamed police officer, the officer had told her that she had better not get pregnant, and the officer had attempted to force her to perform oral sex upon him. The woman eventually identified herself as Diane Eshmawi and the officer as the plaintiff.

1. Defendant Howell is the Chief of Police for the City of Muskegon Heights.

Although, Howell testified, he did not believe the plaintiff posed a threat to Ms. Eshmawi, Howell was of the opinion that the allegations were of such gravity as to warrant further investigation. Within the next few weeks Howell, accompanied by his second-in-command, interviewed Ms. Eshmawi on two occasions. The interviews were tape-recorded and subsequently transcribed. The transcripts were later returned to Ms. Eshmawi by a sergeant and detective[2] for her review and signature.

After completing his investigation, Chief Howell found that the plaintiff had been guilty of conduct unbecoming a police officer in violation of the rules and regulations found in the Muskegon Heights Police Department Manual. On August 20, 1981, after receiving a written statement from the plaintiff explaining his side of the story, Chief Howell demoted the plaintiff to patrol officer and suspended him for fifteen working days without pay. These sanctions were based on Chief Howell's findings that the plaintiff had used his position as a member of the Muskegon Heights Police Department to develop a social relationship with Diane Eshmawi and that the plaintiff had made derogatory remarks about Dolores Meadley.

The plaintiff filed a grievance against the department, alleging that the disciplinary action taken against him violated the terms of the applicable collective bargaining agreement. An arbitration hearing was held, after which the arbitrator determined first that the evidence supported the Chief's determination that the plaintiff had acted improperly in using his position to develop a social relationship with Ms. Eshmawi and second that the evidence did not support a finding that the plaintiff had made the statement regarding Mrs. Meadley. The arbitrator therefore upheld the fifteen day suspension but reinstated the plaintiff to the rank of lieutenant.

The plaintiff subsequently brought this action alleging that his first, fourth, ninth, and fourteenth amendment rights had been violated by the investigation and disciplinary action. The plaintiff specifically claimed that Chief Howell's actions deprived him of his right to freely associate with others when off-duty, infringed upon his right to privacy while off-duty, and deprived him of property—i.e., his job—without due process.[3] The plaintiff seeks damages, a declaratory judgment holding unconstitutional the Muskegon Police Department Rules and Regulations as applied to him, and an order enjoining the defendants from enforcing the allegedly unconstitutional rules against him.

In a case which arose in somewhat similar circumstances, this Court recently has had occasion to discuss the effect of public employment upon a person's privacy and associational rights—specifically employment as a police officer. *Briggs v. North Muskegon Police Department*, 563 F.Supp. 585 (W.D.Mich.1983). That case arose out of the dismissal of a married part-time police officer for cohabiting with a married woman not his wife. The Court held that privacy and associational interests therein implicated were sufficiently fundamental to warrant scrutiny of the defendants' actions on more than minimal rationality basis and that "[i]n the absence of a showing that a policeman's private, off-duty personal activities have an impact upon his on-the-job

---

**2.** Because of the investigation, the circumstances surrounding Ms. Eshmawi's allegations became known to six people related to the department. These persons were Chief Howell, his second-in-command Captain Thompson, the sergeant and detective who delivered the statements to Ms. Eshmawi for her signature and who were otherwise involved in the investigation, the Muskegon Heights City Manager, and Dolores Meadley—the clerk who first referred Ms. Eshmawi to the plaintiff.

Mrs. Meadley was informed because Ms. Eshmawi told Chief Howell that the plaintiff had

claimed that he had had an affair with Mrs. Meadley. Ms. Eshmawi apparently related some of the other allegations regarding the plaintiff directly to Mrs. Meadley.

**3.** No evidence was adduced at trial regarding any deprivation of the plaintiff's right to freedom of speech. The Court, therefore, shall not consider any free speech claims but shall limit itself to consideration of the plaintiff's associational and privacy claims.

performance ... inquiry into those activities violates the constitutionally protected right of privacy." 563 F.Supp. at 591, *citing Shuman v. City of Philadelphia*, 470 F.Supp. 449, 459 (E.D.Pa.1979).

In *Briggs*, the conduct for which the officer was discharged was entirely off-duty and had no proven effect upon his on-duty performance. Such is not the case here.

■ In order to provide himself with an opportunity to enter into a liaison with Ms. Eshmawi, the plaintiff failed to follow departmental procedures which required him to forward the incident report which he made out to the detective bureau for investigation rather than investigating himself. In addition, the plaintiff admits that the incident report which he made out was incomplete.

The plaintiff testified at the arbitration hearing and at the trial of this matter that on July 20, 1981 Ms. Eshmawi complained of her former boyfriend's attempts to convince her to become a prostitute. The plaintiff was aware of the Department's concern over the problem of prostitution in the city and also of the ongoing investigation of the former boyfriend who was a reputed pimp. The plaintiff also failed to report the fact that, during one of the meetings at Ms. Eshmawi's home, she allegedly offered to become a prostitute and pay the plaintiff.[4]

Based upon the totality of the circumstances, the Court finds that the plaintiff's conduct was related to, and did have an effect upon, his job performance. Although certain specific actions occurred while the plaintiff was off-duty, his relationship with Ms. Eshmawi began through, and was fostered by, his performance of his official duties. The investigation was not, therefore, improper on its face. *Briggs*, 563 F.Supp. at 591.

■ The plaintiff also alleges that the investigation of his relationship with Ms. Eshmawi infringed upon his associational and privacy rights—particularly due to its scope and the subsequent publication. Upon consideration of all of the facts, the Court is of the opinion that the scope of the investigation and the publication of its results were reasonable.

According to the Muskegon Heights Police Department Manual, the Chief of Police is required to "investigate all violations of the orders, rules and regulations of the Department or any misconduct on the part of any members thereof and shall report the same to the Mayor with his recommendation thereon." Muskegon Heights, Mich. Police Manual § 3(4) (1980); *see also* § 13(10). In the instant case, a complaint was lodged against the plaintiff and the Chief was required to investigate.

It is important to note that this matter came to Chief Howell's attention as the result of a complaint made by Ms. Eshmawi. When she called to complain about Lieutenant Jackson, Ms. Eshmawi expressed concern for her safety. Notwithstanding the fact that Chief Howell did not share Ms. Eshmawi's concern, it is clear that the charges had to be investigated. It is also clear that the charges were not without merit.

The plaintiff complains that the investigation delved too deeply into the nature of his relationship with Ms. Eshmawi. A review of the transcripts of the Chief's interviews with Ms. Eshmawi reveals that the interviews, which *were* the investigation for all practical purposes, were limited to only those specific charges made by Ms. Eshmawi.

Insofar as publication of the results of the investigation is concerned, the evidence showed that Chief Howell's publication was limited only to those persons directly involved in the investigation and to the city

---

4. The plaintiff testified at the arbitration hearing and at trial that Ms. Eshmawi made this offer to him. Ms. Eshmawi denied ever having made such an offer. Asserting that the offer was made, the plaintiff admitted that he should have reported it.

manager. There clearly was no excessive publication on Chief Howell's part.[5]

It should also be noted that the plaintiff's associational and privacy interests were not the only interests implicated in this matter. The Department has an interest in seeing that its officers do not use their official positions to solicit female complainants. Even though the liaison occurred while the plaintiff was off-duty, the initial contact with, and solicitation of, Ms. Eshmawi occurred while the plaintiff was on duty.

■ Finally, the plaintiff alleges that his right to procedural due process was violated when he was suspended and demoted without a prior hearing. The plaintiff's due process claim is without merit, however.

As the Supreme Court has stated:

The extent to which procedural due process must be afforded ... is influenced by the extent to which [the plaintiff] may be "condemned to suffer grievous loss," ... and depends upon whether the [his] interest in avoiding that loss outweighs the governmental interest in summary adjudication. Accordingly, ... "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action."

*Goldberg v. Kelly*, 397 U.S. 254, 262–63, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970) (citations omitted). In the instant case, although the plaintiff was not afforded a pre-suspension evidentiary hearing, he was not summarily suspended and demoted.

The action taken by Chief Howell was taken only after a full investigation of Ms. Eshmawi's complaint and after the plaintiff was given an opportunity, of which he took advantage, to file his own report on the situation. Defendants' Exhibit F.

The instant case lacks the "crucial factor" which was present in *Goldberg v. Kelly*—"that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate." 397 U.S. at 263, 90 S.Ct. at 1018 (emphasis in original). It must also be remembered that the plaintiff had ample opportunity for extensive post-suspension evidentiary hearings, before the arbitrator and in court.[6]

The Supreme Court has noted:

Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property. Thus, in deciding what process constitutionally is due in various contexts, the Court repeatedly has emphasized that "procedural due process rules are shaped by the risk of error inherent in the truth-finding process ...."

*Carey v. Piphus*, 435 U.S. 247, 259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978) (citations omitted). In the instant case, the procedure followed by Chief Howell adequately protected the plaintiff against any improper deprivation of property. The plaintiff, therefore, was not denied his right to procedural due process.

For all of the above reasons, the Court is of the opinion that the plaintiff has failed

---

**5.** It appears from the record that certain persons in the Police Department may have become aware of the plaintiff's relationship with Ms. Eshmawi and/or the investigation because they were told by Ms. Eshmawi. In addition, the local newspaper also ran an article about the filing of the instant lawsuit. Chief Howell should not be held liable for this publication. Also, although Arthur Baldwin, one of the plaintiff's witnesses, testified that the incident had affected the plaintiff's standing in both the general and black communities in Muskegon Heights, and that the incident had been dis-

cussed in the black community prior to the article being published, there was absolutely no evidence adduced which attributed this to Chief Howell. Mr. Baldwin, in fact, stated that the matter was not widely known before the newspaper article was published.

**6.** The arbitrator's decision did not, of course, preclude the plaintiff from bringing the instant action. *See, e.g., Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

52

to prove violations of any constitutional rights. Judgment shall be entered for the defendants.