Alex SYLVESTER Plaintiff

v.

Doug FOGLEY, Steve Clemmons, and Don Melton Defendants

No. 04–2200.

United States District Court, W.D. Arkansas, Ft. Smith Division.

July 28, 2005.

Robert A. Newcomb, Little Rock, AR, for Plaintiff.

Lori Freno, Asst. Atty. Gen., Little Rock, AR, for Defendant.

## MEMORANDUM OPINION AND ORDER

DAWSON, District Judge.

Currently before the Court is Defendants' Motion for Summary Judgment (Doc. 11), Plaintiff's Response (Doc. 17), and Defendants' Reply. (Doc. 22.) This case arises out of an investigation conducted by the Arkansas State Police (hereinafter "ASP"). Separate Defendants Sergeant Steve Clemmons and Lieutenant Doug Fogley investigated a report of a sexual relationship that occurred between Plaintiff, an ASP Officer, and a female complainant in a criminal investigation. Plaintiff filed a complaint (Doc. 1) pursuant to 42 U.S.C. § 1983 and the Arkansas Civil Rights Act (hereinafter "ACRA"), Arkansas Code Annotated § 16–123–105, alleging that the ASP investigation violated his constitutionally protected privacy rights. Plaintiff also contends Separate Defendant Don Melton, former Director of the ASP, failed to institute policies and training programs that would have prevented such violations. In their Answers (Doc. 2, 4), Defendants deny they violated Plaintiff's constitutional rights and claim to be entitled to qualified immunity. For the reasons that follow, the Defendants' Motion (Doc. 11) is GRANTED.

## I. Background

The following facts are undisputed unless otherwise noted. At all times relevant to this case, Plaintiff was employed as a criminal investigator in the ASP Criminal Investigation Division, based in Fort Smith, Arkansas. Plaintiff's immediate supervisor was Separate Defendant Sgt.

Clemmons. Clemmons, in turn, was supervised by Separate Defendant Lt. Doug Fogley.

In January 2003, Clemmons assigned Plaintiff to investigate a complaint made by a married couple, who were also co-owners of a local business. The couple suspected their secretary of embezzling substantial sums of money. During Plaintiff's investigation, he contacted the female complainant (hereinafter "Complainant") and requested copies of certain documents that were relevant to the case. The two agreed that Complainant would hand-deliver the documents to Plaintiff's home. The forthcoming ASP investigation determined that, during Complainant's visit, Plaintiff and Complainant engaged in sexual intercourse several times. (Doc. 19 at ¶ 26.)

On August 5, 2003, Complainant's husband, after having discovered the sexual relationship between Plaintiff and his wife, contacted Clemmons to lodge a complaint against Plaintiff. Clemmons scheduled an interview so that a formal complaint could be entered. The next day, Clemmons interviewed Complainant's husband, who informed Clemmons that the affair between Plaintiff and his wife had caused them to divorce and was "messing up our case against [the secretary]."[1] (Doc. 19 ¶ 10.) Fogley assigned Clemmons to investigate the matter. On August 7, 2003, Fogley sent Plaintiff correspondence advising him of the complaint and the impending investigation.

On August 25, 2003, Clemmons began the investigation by interviewing Complainant, who denied having a sexual relationship with Plaintiff. On August 27, 2003, Clemmons interviewed Plaintiff, who repeatedly maintained that he had never

had a sexual relationship with Complainant.

On September 10, 2003, Plaintiff was given a polygraph examination, following the execution of two documents. The first document was an Arkansas State Police Policy Acknowledgment Form, which included language that "[a]ny employee who knowingly and deliberately lies or makes a false statement while being questioned during an internal investigation will be terminated," and the second document was the so-called "Garrity Warning", which advised Plaintiff if he did not answer all questions "fully and truthfully" he would be subject to disciplinary action. (Doc. 19 at ¶ 24.) During the pre-polygraph interview, Plaintiff again denied having a sexual relationship with Complainant. The polygraph examination indicated that Plaintiff's answers were deceptive, and Plaintiff ultimately admitted the sexual relationship.

On September 11, 2003, Clemmons contacted the federal and state prosecutors in charge of the embezzlement case. The Assistant United States Attorney related to Clemmons that Plaintiff's credibility would be an issue in future prosecutions. Likewise, the State Deputy Prosecuting Attorney attributed the dismissal of the state's case against the secretary to Plaintiff's actions and expressed concern regarding the integrity of Plaintiff's future investigations.

After a review of the investigation report, Fogley recommended that certain disciplinary action be taken against Plaintiff for compromising the embezzlement case and damaging the reputation of the ASP. The Division commander also recommended disciplinary action. On November 14, 2003, a three-member Disciplinary Re-

---

1. The evidence is unclear whether Complainant's husband actually attributed the dismissal of the embezzlement case to Plaintiff's conduct. At another point in his communi-

cations with Clemmons, he stated, "I'd rather not press charges against this woman." (Doc. 19 ¶ 7.)

view Board (hereinafter "DRB") was convened to review the investigation report, hold a hearing, and recommend any punishment. The DRB then recommended to Melton a 15–day suspension without pay, a one-year reduction in rank to trooper first class, and a transfer from the Criminal Investigation Division to the Highway Patrol Division.

After his review of the disciplinary recommendations,[2] Melton terminated Plaintiff's employment on April 7, 2004. Plaintiff appealed the decision to the ASP Commission, which conducted a hearing on July 20, 2004. The ASP Commission ultimately reinstated Plaintiff and simultaneously transferred him to the Highway Patrol Division.

Plaintiff's complaint alleges causes of action against the Separate Defendants in their individual capacities. Plaintiff alleges violations of his right of privacy as a result of the ASP delving into his off-duty, intimate, consensual sexual relationship. Plaintiff also alleges that Melton, while aware that Fogley and Clemmons had the authority to investigate ASP employees, failed to institute policies and training programs that would protect the privacy rights of those employees. Plaintiff seeks punitive damages and compensatory damages for mental anguish and lost pay. Defendants deny any constitutional rights violations and claim alternatively that, in the event the Court does find that Plaintiff's constitutional rights were violated, they are entitled to qualified immunity.

## II. Standard for Summary Judgment

A motion for summary judgment will be granted when "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A "material" fact is one "that might affect the outcome of the suit under the governing law …." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine" issue of material fact exists when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party. *Id.* In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, the burden then shifts to the opposing party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The opposing party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," and "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505 (citing Fed.R.Civ.P. 56(e)). In order to withstand the motion for summary judgment, Plaintiff must substantiate his allegations with "sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Gregory v. Rogers,* 974 F.2d 1006, 1010 (8th Cir.1992), cert. denied, 507 U.S. 913, 113 S.Ct. 1265, 122 L.Ed.2d 661 (1993). A

---

**2.** Concurrent to Clemmons' investigation of Plaintiff's relationship with Complainant, a second ASP investigation was being conducted into allegations of inappropriate sexual conduct by Plaintiff towards two female suspects in an arson investigation. On February 5, 2004, another DRB was convened, which ultimately found Plaintiff's conduct to be improper and unbecoming and recommended to Melton that Plaintiff receive a letter of reprimand and a transfer.

mere scintilla of evidence is insufficient to avoid summary judgment. *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir.1994).

## III. Relevant Law and Discussion

### A) Plaintiff's Claims Against Fogley and Clemmons Under § 1983 and the ACRA Alleging Violations of Privacy Rights Protected by the Federal and State Constitutions

Arkansas Code Annotated § 16–123–105 sets out certain civil rights offenses, which provide in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of this state or any of its political subdivisions subjects, or causes to be subjected, any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Arkansas Constitution shall be liable to the party injured in an action at law, a suit in equity, or other proper proceeding for redress.

We note that the ACRA expressly instructs us to look to federal civil rights law when interpreting the Act. Specifically, Arkansas Code Annotated § 16–123–105 states in pertinent part, "When construing this section, a court may look for guidance to state and federal decisions interpreting the federal Civil Rights Act of 1871 .... " *See also Island v. Buena Vista Resort*, 352 Ark. 548, 103 S.W.3d 671, 675 (2003).

Accordingly, the Court will analyze Plaintiff's ACRA and § 1983 claims co-extensively under established federal precedents construing § 1983. *See Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 615 n. 3 (8th Cir.2000). To establish a claim under § 1983, a plaintiff must demonstrate a violation of a right secured by the Constitution and laws of the United States, which was committed by a person acting under the color of state law. *W. v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101

L.Ed.2d 40 (1988). Plaintiff seeks to fulfill those requirements by alleging that Defendants, acting as ASP officials, violated his right of privacy as protected by the Liberty Clause of the Fourteenth Amendment (Doc. 1 ¶ 19) when they investigated his sexual relationship. Defendants maintain that a police agency investigation into the private conduct of an officer is constitutional only if that conduct affects the officer's duties.

The parties do not dispute the procedural execution of the investigation or the material content of its findings. The issue of whether the investigation violated Plaintiff's privacy rights may then be determined as a matter of law. It must be determined whether a police agency investigation into a sexual relationship between a police officer and a principal in an investigation violates that officer's right of privacy.

■■■ The United States Constitution affords persons the right of privacy, *see Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and of association with other persons. *See NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). The "zone of privacy" encompasses private sexual affairs and is impermeable to unwarranted government intrusion. *See Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003); *see Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *see Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). While police officers are possessed of the same rights and privileges as all other United States citizens, the zone of privacy for public officers is smaller. *Swope v. Bratton*, 541 F.Supp. 99, 108 (W.D.Ark.1982). Privacy rights of police officers must be balanced with the legitimate interests of police departments in maintaining discipline and achieving effec-

tive law enforcement. *See Shuman v. City of Philadelphia*, 470 F.Supp. 449, 459 (E.D.Pa.1979). Thus, the public's need for effective law enforcement is weighed against police officers' limited, but properly respected, privacy rights. The result is that police officers have a "right to a private life free from intrusion *unless* it interferes with [their] work performance or the efficiency of the governmental service." *Swope*, 541 F.Supp. at 108 (emphasis added). In the absence of a nexus between private activity and poor job performance, investigation into private affairs is unconstitutional. *Id.* Where an officer's private life affects his job performance, a police agency may inquire into that distinct, job-related portion of the officer's private affairs. *See id.*

This Court has recognized that "it is well-known that public officers are subject to close scrutiny," and "[t]he respect and confidence of the public is essential to the performance" of their jobs. *Id.* However, while police departments have a considerable interest in maintaining the public's respect and protecting the public's safety, investigations into the private lives of police officers must not run afoul of the constitution by intruding into matters unrelated to employment. Although police officers must adhere to high standards of character and conduct when they become subject to department policies, "[g]overnment employees do not waive all their constitutional rights when they enter public service." *Am. Fed'n of Gov't Employees v. Schlesinger*, 443 F.Supp. 431, 434 (D.D.C.1978). Thus, police departments must keep their inquiries narrow. *See, e.g., Thorne v. El Segundo*, 726 F.2d 459, 471 (9th Cir.1983).[3]

Defendants direct the Court's attention to *Jackson v. Howell*, in which the District Court for the Western District of Michigan held that a police department investigation into an officer's sexual relationship with a female complainant did not violate the officer's privacy rights. 577 F.Supp. 47, 48 (W.D.Mich.1983). In *Jackson*, a police officer visited the home of a female complainant and engaged in sexual intercourse with her. *Id.* Upon learning of the officer's conduct, the Chief of Police disciplined him for using his official position to develop a social relationship with a complainant. *Id.* at 49. Jackson brought a § 1983 action alleging violations of his privacy rights. *Id.* The *Jackson* court determined that despite the investigation of off-duty private activity, the fact that the officer had solicited the complainant by using his official position to initiate social relations sufficiently linked the private activity to the officer's job performance. *Id.* at 50. The court found that "[a]lthough certain specific actions occurred while the plaintiff was off-duty, his relationship ... began through, and was fostered by, his performance of his official duties." *Id.* at 50.

Although the ASP investigated Plaintiff's intimate sexual relations that occurred in a private setting, those relations were precipitated and fostered by Plaintiff's use of his official position to become familiar with Complainant. Plaintiff met Complainant through his investigation of her secretary and interacted with her in his official capacity. Plaintiff's private relationship was thus inextricably linked to his employment. The fact that Complainant was a principal in a criminal investigation Plaintiff was conducting suggested to the ASP that an intimate relationship with her could affect Plaintiff's job performance.

 Notwithstanding, Plaintiff contends that the investigation of his off-duty, per-

---

**3.** In *Thorne,* the court found that an excessive inquiry into the sexual history of a female seeking government employment was unconstitutional.

sonal activities violated his right of privacy and that the investigation should have been "limited to whether [the sexual encounter] occurred on duty or not." (Doc. 18 at ¶ 1.) The sexual encounter between Plaintiff and Complainant occurred when the pair met to exchange documents related to the embezzlement case.[4] Nevertheless, private, off-duty conduct is subject to investigation if it impacts an officer's job performance. *See Jackson*, 577 F.Supp. at 50. Regardless of whether Plaintiff could fairly be characterized as being either on-duty or off-duty at the time of the sexual encounter, the investigation did not extend to constitutionally protected activities which were not connected to poor job performance. Considering the facts in a light most favorable to Plaintiff, and deeming Plaintiff to have been off-duty at the time of the sexual encounter, his activities would not be protected from investigation if they affected his work.

Plaintiff contends that there is an issue of fact as to whether the sexual relationship interfered with his investigation in the embezzlement case. (Doc. 18 ¶ 1.) The Court disagrees, for here the Plaintiff was fired for lying during an internal investigation, having sexual relations with a principal to an investigation, and being in violation of ASP policies concerning professional conduct. Likewise, the Court finds it is axiomatic that having a sexual affair with a principal to a criminal investigation affects that investigation. The evidence shows a clear and discernable negative impact on Plaintiff's ability to perform his job, both in the embezzlement investigation and in the future, stemming from his sexual relationship with Complainant. The state prosecutor clearly at-

tributed the dismissal of the state's case against the secretary to Plaintiff's conduct. (Doc. 19 ¶ 30.) The prosecutor stated that the state's case against the secretary "had a good likelihood of conviction on several of the charges" but was ultimately dismissed "based on [Plaintiff's] conduct." (Doc. 19 at ¶ 30.) The prosecutor stated Plaintiff's actions "culminated in the dismissal of a case where a victim was essentially robbed of $300,000." (Doc. 19 at ¶ 30.) The state and federal prosecutors both expressed concern for the veracity of Plaintiff's future investigations and testimony. (Doc. 19 ¶¶ 29–30.) The state prosecutor warned that "this office [will] question the veracity of any investigation or representation made by [Plaintiff] in the past or future." (Doc. 19 at ¶ 30.) Similarly, the federal prosecutor believed Plaintiff would henceforth have credibility problems in federal court. (Doc. 19 at ¶ 29.) Plaintiff characterized the sexual encounter as a "mistake." (Doc. 19 at ¶ 64.)

■■ Notwithstanding the Court's conclusion that the Plaintiff's sexual affair with a principal in an investigation could constitutionally be investigated by ASP and that Plaintiff could be subjected to an adverse employment action because of his conduct, it is still necessary that the ASP possessed preliminary evidence before it initiated the investigation. *See Shuman*, 470 F.Supp. at 460. Police agencies may investigate the private lives of employees when they suspect the employees' private lives are causing poor job performance and not just when that is known to the agency. There is a distinction to be made between the existence of a nexus and appearance of

---

4. There is conflicting testimony as to whether Plaintiff should be considered to have been on-duty or off-duty at the time of the sexual encounter. Plaintiff and Complainant contend that Plaintiff was off-duty (Doc. 18 ¶ 1),

while Separate Defendant Melton contends that interaction with the subject of an ongoing investigation is categorically considered to occur on-duty. (Doc. 19 ¶ 72.)

a nexus. While it is well-established that private conduct must affect job performance to be investigated, it is less clear what quantum of evidence is required to justify a police agency in moving forward with an investigation. This Court shares the concern of the *Shuman* Court that there is "widespread danger of abuse in permitting a public employer to maintain ... broad investigative power into the private decisions of its employees." *Id.* at 461. In recognition of this danger, police departments may constitutionally investigate the private lives of employees only following some preliminary evidence of job-relatedness. *Id.* at 460. There must be sufficient evidence to indicate an impact on job performance stemming from the employee's private conduct. *See Schlesinger,* 443 F.Supp. at 434; *see also Gibson v. Fla. Legislative Investigation Comm.,* 372 U.S. 539, 546, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963). Without a justifiable suspicion that an employee's private life is affecting his work, police department investigations could amount to mere fishing expeditions for potential private misconduct.

The United States Supreme Court instructs that when a state body investigates citizens in a way that constitutes a "significant encroachment upon personal liberty, the State may prevail only upon showing a subordinating interest which is compelling." *Bates v. City of Little Rock,* 361 U.S. 516, 524, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960). While recognizing that the government, in its capacity as an employer, has a different interest in regulating the conduct of its employees than it does, in its capacity as sovereign, in regulating the conduct of its citizens, *see Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), there nevertheless must be preliminary evidence sufficient to indicate an impact on job performance prior to a police department investigating its employees. Government employees do not divest themselves of constitutional rights merely by accepting employment. *Schlesinger,* 443 F.Supp. at 434.

■ In the present case, the formal complaint lodged by Complainant's husband against Plaintiff, alleging that Plaintiff had an affair with his wife during the investigation of their secretary, constituted sufficient preliminary evidence. The ASP investigation into the distinct portion of Plaintiff's private life was justified by the realistic potential for there to be a substantial impact on Plaintiff's job performance resulting from the affair. A criminal investigator's personal involvement with parties to an investigation could very likely affect his judgment, objectivity, and credibility. Thus, the ASP had adequate grounds to suspect that Plaintiff's private life was affecting his ability to effectively enforce the law, and the investigation was not initiated prematurely, unjustifiably, or unconstitutionally.

However, even if a police department investigation of an employee is justifiably predicated on actions evidenced to be closely related to that employee's job performance, it is possible for that investigation to be overreaching and nevertheless delve into constitutionally protected activities. *See, e.g., Thorne,* 726 F.2d at 471. Plaintiff contends that the ASP investigation was not "narrowly tailored" as required by *Thorne.* (Doc. 17.) *Id.* at 469. However, this Court finds no point where the ASP investigation overstepped the scope of its constitutional inquiry. The interviewees were all parties to the incident, and they were not asked questions that went beyond the scope of the investigation, as in *Thorne,* where the court found that the police department had intruded into constitutionally protected areas by inquiring into a job applicant's sexual history in an attack on her character. *Id.* at 471. In our case, the ASP did not

needlessly expose Plaintiff to embarrassment or disgrace by unjustifiably probing through his sexual history. Plaintiff never objected to the personal or irrelevant nature of the inquiry during questioning. The Court finds the manner of the investigation and the information gathered did not violate Plaintiff's privacy rights. *See id.*

Plaintiff also contends that the polygraph examination improperly focused on "whether there had been sex or not" and not "whether [Plaintiff] had done a good job or a bad job." (Doc. 18.) Plaintiff suggests that this is an issue of material fact that precludes summary judgment. However, because a sexual relationship between an officer and a principal in an investigation clearly has the potential of compromising that officer's ability to conduct the investigation impartially and credibly, the primary purpose of the polygraph examination is irrelevant. Even if it were intended specifically to discover the sexual relationship, that intent would not be unconstitutional. The issue of "whether there had been sex or not" was a necessary prerequisite to determining whether Plaintiff had "done a good job or a bad job," because it was the sexual relationship itself that compromised the investigation and Plaintiff's future credibility as a criminal investigator. Accordingly, Defendants admit that the polygraph was intended to determine if a sexual encounter had occurred.

Based on the foregoing, the Court finds that the Defendants' investigation of Plaintiff's sexual relationship with Complainant did not violate his constitutionally protected privacy rights. As the Court mentioned above, the analysis of the Plaintiff's ACRA claims is co-extensive with the analysis of Plaintiff's § 1983 claims. Accordingly, the Court finds that both Plaintiff's federal and state claims fail on the same analysis.

## B) Plaintiff's Claims Against Melton for Failing to Establish Policies and Training to Prevent Privacy Violations

Plaintiff alleges that Separate Defendant Melton is liable under § 1983 for failing to establish policies and training programs on privacy rights, which would prevent violations during employee investigations. Because Plaintiff has failed to establish a violation of his constitutional rights, he has no claim against Melton. Melton did not directly participate in the investigation and there is no evidence in the record of a pattern of employee privacy rights violations at the ASP. Melton could only be liable to Plaintiff if he directly participated in a constitutional violation or caused one by failing to supervise and train. *Andrews v. Fowler,* 98 F.3d 1069, 1078 (8th Cir.1996) (citing *Tilson v. Forrest City Police Dep't,* 28 F.3d 802, 806 (8th Cir.1994)). *Respondeat superior* and vicarious liability do not attach under § 1983. *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). To violate a plaintiff's constitutional rights by failing to supervise and train, a supervisor must have: (1) received notice of a pattern of unconstitutional acts committed by subordinates, (2) demonstrated deliberate indifference to or tacit authorization of the acts, (3) failed to take sufficient remedial action, and (4) thus proximately caused injury to the plaintiff. *Jane Doe A. v. Special Sch. Dist. of St. Louis County,* 901 F.2d 642, 645 (8th Cir. 1990). Because both theories of liability require the plaintiff to have suffered injury to a constitutionally protected right, Plaintiff's claim against Melton fails as a matter of law.

## C) Defendants' Claim of Entitlement to Qualified Immunity

Having found no constitutional rights violation, the Court need not reach the issue

of qualified immunity. If a violation cannot be established on the facts alleged, it is unnecessary to inquire further into the qualified immunity analysis. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). We note, however, in the event that a violation had occurred, the Court would have found Defendants to be entitled to qualified immunity.

The qualified immunity analysis consists of a two-part inquiry. The court must first consider the threshold inquiry of whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the defendants' conduct violated a constitutional right. *Avalos v. City of Glenwood* 382 F.3d 792, 798 (8th Cir.2004); *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. If a violation could be established on the facts alleged, the second inquiry is whether the right was clearly established at the time the violation occurred. *Id.* The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful. *Id.* at 202, 121 S.Ct. 2151. The court then examines pre-existing law to see if it would be apparent to reasonable officials that their actions were unconstitutional. *Weiler v. Purkett*, 137 F.3d 1047, 1052 (8th Cir.1998). Qualified immunity provides protection "to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

Apropos to the qualified immunity analysis in the present case is that it "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." *Saucier*, 533 U.S. at 201–02, 121 S.Ct. 2151. The right must be established in a "particularized" and "relevant" sense so that a reasonable official would know that he was violating that right in the situation presented to him.

*Id.* Separate Defendants were certainly aware of the general right of privacy at the time of their investigation. However, as demonstrated by the Court's rendition of pre-existing law on the subject, the relevant inquiry is whether investigations are limited to private conduct that affects job performance. Thus, when presented with evidence that a police officer had compromised his duties by engaging in a sexual relationship with a principal in an investigation, reasonable police department officials would not understand an investigation into that conduct to be a privacy violation unless the investigation went beyond its constitutional scope by delving into matters not legitimately related to the officer's job performance.

Furthermore, failing to conduct an investigation may have exposed the ASP to liability of a different kind by turning a blind eye to inappropriate police conduct in violation of department policy. Further misconduct by Plaintiff may have eventually turned attention to the ASP's failure to take disciplinary action with prior knowledge of Plaintiff's behavior. It is more reasonable to expect an ASP official to investigate complaints of misconduct than to allow police officers to compromise the objectives of the ASP in any manner as long as they do so off-duty.

## IV. Conclusion

Based on the foregoing, Defendants' Motion for Summary Judgment is GRANTED and Plaintiffs claims under § 1983 and ACRA are DISMISSED WITH PREJUDICE. Defendants' motion to continue (Doc. 20) is DENIED as moot.