# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 05-3492

———————

Alex Sylvester,                                    *
                                                   *
            Appellant,                             *
                                                   *   Appeal from the United States
      v.                                           *   District Court for the
                                                   *   Western District of Arkansas.
Doug Fogley; Steve Clemmons;                       *
Col. Don Melton,                                   *
                                                   *
            Appellees.                             *

———————

Submitted: April 21, 2006
      Filed: October 18, 2006 (corrected 11/1/06)

———————

Before LOKEN, Chief Judge, BOWMAN and BYE, Circuit Judges.

———————

BOWMAN, Circuit Judge.

      This appeal asks whether members of the Arkansas State Police (ASP) violated a criminal investigator's constitutional right to privacy by investigating an allegation that the investigator had sexual relations with a crime victim during the course of the underlying criminal investigation.  Like the District Court,[1] we hold that there was no constitutional violation in this case.

---

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

## I.

In January 2003, Sonya Hawkins (Mrs. Hawkins) notified the ASP that she and her husband (Mr. Hawkins) believed that an employee was embezzling from the company that the Hawkinses co-owned. Sergeant Steve Clemmons assigned the embezzlement investigation to Corporal Alex Sylvester, a criminal investigator with the ASP. In August 2003, Mr. Hawkins complained to Clemmons that Sylvester had engaged in an affair with Mrs. Hawkins during the investigation and that the affair hurt the embezzlement case. Clemmons reported the allegations to his supervisor, Lieutenant Doug Fogley, who reported the allegations to his supervisor, Captain Mike Davidson. Fogley assigned Clemmons to investigate the allegations. Fogley also notified Sylvester that the ASP was going to investigate allegations made by Mr. Hawkins in a complaint filed with the ASP claiming that Sylvester had had an affair with Mrs. Hawkins while Sylvester was on duty.

Clemmons interviewed Sylvester and Mrs. Hawkins, who both denied that they had engaged in sexual relations. In September 2003, a polygraph examination of Sylvester indicated that his denial of a sexual relationship with Mrs. Hawkins was deceptive. When Sylvester was informed of the polygraph results, he admitted that he had engaged in sexual intercourse with Mrs. Hawkins at his residence in April 2003. Sylvester admits that he met Mrs. Hawkins "in the course of his duties as a state police officer." Appellant's Brief at 6. Mrs. Hawkins later corroborated that she and Sylvester had sexual intercourse at Sylvester's house. When asked why she had been at Sylvester's house, Mrs. Hawkins explained that she had called Sylvester during the duty day to ask him questions about her case. Sylvester told her that he needed better copies of three documents. Mrs. Hawkins explained that the documents that Sylvester was requesting were at her office and that she could deliver those documents to Sylvester at his house after work. During Mrs. Hawkins's visit to Sylvester's house, the two had sexual intercourse.

When the state prosecutor learned about Sylvester's conduct, the prosecutor wrote a letter to the ASP that included the following statement:

> Obviously the State is not in a position to proceed with the prosecution of this case based upon Mr. Sylvester's conduct. Mr. Sylvester's actions were not only grossly improper, but they culminated in the dismissal of a case where a victim was essentially robbed of $300,000.00. The criminal case, in my opinion, had a good likelihood of conviction on several of the charges. This has also caused this office to question the veracity of any investigation or representation made by Mr. Sylvester in the past or future. While that is unfortunate, I am sure you can understand that a prosecutor must trust the investigating officer without question. We trust that his professionalism and willingness to seek justice will override any ulterior motive or personal feeling that may develop in a case. Unfortunately, we cannot assume this is true with this investigator any longer.

Letter by John C. Riedel (Sept. 19, 2003). A federal prosecutor had a similar response when he learned about Sylvester's conduct and lies. Shortly after Sylvester learned that Mr. Hawkins had complained about the sexual relationship between Sylvester and Mrs. Hawkins but before Sylvester had admitted to the conduct, Sylvester contacted the federal prosecutor to assure the prosecutor that any allegations that Sylvester had been sexually involved with a witness in the case were untrue. When the prosecutor later learned that Sylvester admitted to having sexual relations with a witness in one of his investigations, the prosecutor advised the ASP "that Corporal Sylvester's credibility was now an issue with respect to future cases because of his conduct and statements to me." Declaration of Steven N. Snyder (June 21, 2005). The prosecutor further stated, however, that he had decided not to prosecute the embezzlement case based on insufficient facts.

In late September 2003, Clemmons reported the results of his investigation to Fogley. Fogley then reported to Davidson that Sylvester had violated a number of the

Rules of Conduct in the ASP Policy and Procedure Manual, including rules prohibiting untruthfulness, insubordination, unbecoming conduct,[2] disreputable personal conduct,[3] and on-duty sexual conduct.[4] Fogley did not mention the rule prohibiting abuse of position.[5] Fogley recommended that Sylvester receive a five-day suspension and be transferred out of the Criminal Investigation Division (CID). Fogley specifically addressed the sexual-conduct allegations:

> I realize in this day and time, acts between two consenting adults are usually viewed as strictly the business of the parties involved [regardless] of moral issues. However, in this instance the sexual relationship between Sylvester and Mrs. Sonya Hawkins completely compromised a $300,000.00 embezzlement investigation and resulted in a dismissal of charges. Sylvester's behavior also reflected adversely on the [ASP]'s reputation for honesty, integrity, and professionalism.

Mem. from Fogley to Davidson (Oct. 2, 2003).

Davidson then reported to his supervisor, Major J.R. Howard, explaining that the investigation involved three issues: sexual behavior, actions that damage criminal

---

[2]"Officers shall conduct themselves at all times, both on and off duty, in such manner as to reflect most favorably on the ASP. Conduct unbecoming an officer shall include that which brings the ASP into disrespect or reflects discredit upon the officer as a member of the ASP, or that which impairs the operations or efficiency of the ASP or officer." ASP Pol'y & P. Manual § 4.080, ¶ 1.

[3]"Officers shall conduct their personal business affairs in a manner that does not discredit or otherwise bring the ASP into disrepute or compromise the officers' ability to perform their duties." Id. § 4.080, ¶ 2.

[4]"Officers shall not engage in sexual contact while on duty . . . ." Id. § 4.080, ¶ 21.

[5]"Officers shall not use their official position . . . for personal . . . gain." Id. § 4.080 ¶ 9.

prosecutions, and untruthfulness. Addressing the first issue, Davidson stated that it was his "opinion that while the off-duty, consen[s]ual affair violates God's law it isn't a violation of ASP policy and therefore, with regards to this issue, I recommend no disciplinary action be taken." Memo. from Davidson to Howard (Oct. 8, 2003). Davidson characterized the other two issues, however, as "much more serious." Id. Davidson wrote, "It is evident that because of Sylvester and [Mrs. Hawkins]'s actions, a sizeable embezzlement investigation was compromised. . . . When actions on or off duty affect a policeman's credibility and ability to follow through with their jobs, then an officer must be accountable for those actions, even if they aren't initially a violation of policy." Id. Davidson also condemned Sylvester's blatant violation of the truthfulness policy. Davidson recommended that Sylvester receive a thirty-day suspension, a reduction in rank, and a transfer to highway-patrol duties.

A Disciplinary Review Board (DRB) convened to review the allegations and make a recommendation to Colonel Don Melton, who at the time was the Director of the ASP. The DRB determined that Sylvester had violated rules prohibiting insubordination, untruthfulness, and improper conduct. As to the improper-conduct rule, the DRB stated, "While conducting a criminal investigation, [Sylvester] engaged in a consensual sexual relationship with one of the victims. This brings the [ASP] into disrespect, reflects discredit upon the officer as a member of the agency and impairs the operation and efficiency of the department." Letter from DRB to Melton (Nov. 14, 2003). The DRB recommended that Sylvester receive a fifteen-day suspension, a reduction in rank, and a transfer from the CID to the Highway Patrol.

Before Melton could act on the DRB's recommendation, the ASP initiated another investigation of inappropriate conduct by Sylvester. The ASP looked into allegations that while Sylvester was conducting an arson investigation, he gave a tour of his house to the two female suspects, made sexual comments, made sexual advances toward one of the suspects, and gave out his personal e-mail address (studdly10@hotmail.com) rather than his ASP e-mail address. A DRB convened to

review the results of that investigation. Finding that Sylvester had violated rules prohibiting unprofessional behavior and unbecoming conduct, the DRB recommended that Sylvester receive a letter of reprimand and be transferred from the CID.

After reviewing the results of the investigations and the recommendations of the DRB, Melton discharged Sylvester. Sylvester appealed the discharge decision to the ASP Commission, which conducted a hearing. Melton's deposition was made a part of the hearing record. In his deposition, Melton made clear that his discharge decision was based in large part on Sylvester's untruthfulness. Relevant here is Melton's testimony relating to Sylvester's sexual relations with Mrs. Hawkins. Responding to a suggestion by Sylvester's attorney that Sylvester had engaged in private, consensual, off-duty sexual activity, Melton stated that Sylvester's sexual activity "occurred during the investigation of which Mrs. Hawkins was one of the victims." Deposition of Melton at 14:17–18 (July 7, 2004). When Sylvester's attorney asked Melton when an investigation ends, Melton answered, "[O]ur work doesn't stop till the prosecution has ended." Id. at 15:23–24. When asked whether the Rules of Conduct prohibit an investigator from engaging in sexual activity with witnesses and victims, Melton said that investigators must be detached during an investigation and should not have any relationships "that would sway, influence testimony, or make them partial to one person or the other. They're strictly fact finders." Id. at 17:16–18. Sylvester's attorney insisted on referring to Sylvester's conduct as private, consensual sex. Melton responded, "I think we disagree on . . . the relationship. The relationship is this woman, Mrs. Hawkins, was involved . . . as a victim in the investigation of a substantial embezzlement investigation. . . . It is unprofessional in any department I've ever been involved in to get involved in personal relationships with anybody involved in fact finding criminal investigations." Id. at 21:17–25. Melton iterated that "Sylvester met this woman due to his being assigned to a criminal investigation. That [sexual] relationship started as a result of that." Id. at 23:4–6. Ultimately, Melton testified that it is "improper conduct by a state police investigator during an official investigation" to have sex with a victim of

the crime being investigated.  Id. at 26:8–9.  Despite Melton's testimony, the ASP Commission reinstated Sylvester (without back pay) and transferred him from the CID to the Highway Patrol.

Unhappy with the ASP Commission's decision, Sylvester sued Clemmons and Fogley, contending that they violated Sylvester's constitutional rights: "The investigation of the Plaintiff by Defendants violated the well established rights to private, intimate sexual activities of the Plaintiff protected under the liberty clause of the Fourteenth Amendment to the Constitution of the United States" as well as "the Plaintiff's right to privacy as recognized by the Arkansas Supreme Court as being embodied in the Arkansas State Constitution."  Sylvester's Complaint at 4, ¶¶ 21–22.  Sylvester also sued Melton, contending that he violated Sylvester's constitutional rights by failing to train employees on privacy rights.  The defendants moved for summary judgment, arguing that Sylvester's constitutional rights had not been violated, but even if they had been, then the defendants were entitled to qualified immunity.  Agreeing, with the defendants in all respects, the District Court granted summary judgment to the defendants.

The District Court asked whether an "investigation into a sexual relationship between a police officer and a principal in an investigation violates that officer's right of privacy."  Sylvester v. Fogley, 383 F. Supp. 2d 1135, 1139 (W.D. Ark. 2005).  Addressing Sylvester's argument that his sexual conduct happened off duty, the District Court held that Sylvester's relationship with Mrs. Hawkins was "inextricably linked to his employment" because Sylvester met her during the course of the criminal investigation and had sex with her "when the pair met to exchange documents related to the embezzlement case."  Id. at 1140–41.  The court found it "axiomatic that having a sexual affair with a principal to a criminal investigation affects that investigation.  The evidence shows a clear and discernable negative impact on [Sylvester]'s ability to perform his job, both in the embezzlement investigation and in the future, stemming from his sexual relationship with [Mrs. Hawkins]."  Id. at 1141.  The court further

noted that the "ASP investigation into the distinct portion of [Sylvester]'s private life was justified by the realistic potential for there to be a substantial impact on [his] job performance resulting from the affair. A criminal investigator's personal involvement with parties to an investigation could very likely affect his judgment, objectivity, and credibility." Id. at 1142. Concluding that "a sexual relationship between an officer and a principal in an investigation clearly has the potential of compromising that officer's ability to conduct the investigation impartially and credibly," the court held that the ASP's investigation of Sylvester's sexual relationship with Mrs. Hawkins did not violate Sylvester's constitutionally protected privacy rights. Id. at 1143. The court similarly concluded that the claim against Melton failed as a matter of law.

The District Court also held that the defendants were entitled to qualified immunity, stating that "when presented with evidence that a police officer had compromised his duties by engaging in a sexual relationship with a principal in an investigation, reasonable police-department officials would not understand an investigation into that conduct to be a privacy violation unless the investigation went beyond its constitutional scope by delving into matters not legitimately related to the officer's job performance." Id. at 1144. The Court suggested that the ASP may have had a duty to investigate Mr. Hawkins's allegations: "[F]ailing to conduct an investigation may have exposed the ASP to liability of a different kind by turning a blind eye to inappropriate police conduct in violation of department policy. Further misconduct by [Sylvester] may have eventually turned attention to the ASP's failure to take disciplinary action with prior knowledge of [Sylvester]'s behavior. It is more reasonable to expect an ASP official to investigate complaints of misconduct than to allow police officers to compromise the objectives of the ASP in any manner as long as they do so off-duty." Id.

Sylvester appeals only the dismissal of his claims against Clemmons and Fogley. Sylvester asserts, "This lawsuit is not about whether [Sylvester] should . . .

have been punished for lying. Rather, it regards whether the [ASP] should have even investigated the consensual, sexual relationship at all." Sylvester's Brief at i.

## II.

We review de novo the District Court's grant of summary judgment to the defendants. Mayer v. Nextel W. Corp., 318 F.3d 803, 806 (8th Cir.), cert. denied, 540 U.S. 823 (2003). Summary judgment is proper only if the evidence, viewed in the light most favorable to Sylvester and giving him the benefit of all reasonable inferences, shows that there are no genuine issues of material fact and that the defendants are entitled to judgment as a matter of law. See id.; Fed. R. Civ. P. 56(c).

Sylvester contends that his fundamental right of privacy prohibited the ASP from investigating his sexual relations with Mrs. Hawkins. Sylvester essentially argues that when Mr. Hawkins complained to the ASP that Sylvester's sexual relations with Mrs. Hawkins were threatening the embezzlement case, the ASP was required to inform Mr. Hawkins that the Constitution bestows upon Sylvester the unfettered right to engage in sexual intercourse with crime victims during the course of his investigation of the underlying crime without interference from the ASP. We disagree.

Procedural-due-process rights emanate from "the words of the Due Process Clause of the Fourteenth Amendment: 'No State shall . . . deprive any person of life, liberty, or property, without due process of law.'" Walker v. City of Kansas City, 911 F.2d 80, 93 (8th Cir. 1990), cert. denied, 500 U.S. 941 (1991). Sylvester does not assert procedural-due-process rights, however, but instead asserts a substantive privacy right. We have stated that "the source of 'substantive due process' is somewhat more obscure" than procedural due process. Id. "Obscure" might best describe the right of privacy. Although the right of privacy is not found in the text of the Constitution, the Supreme Court has identified this penumbral right in the

emanations from various amendments.  Griswold v. Connecticut, 381 U.S. 479, 484 (1965) (explaining that Supreme Court "cases suggest that specific guarantees in the Bill of Rights have penumbras, formed by emanations from those guarantees that help give them life and substance" and that guarantees in various amendments "create zones of privacy"); see Olmstead v. United States, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting) (propounding that the Constitution confers upon individuals a privacy right against the government "to be let alone—the most comprehensive of rights and the right most valued by civilized men," a right that must be protected against "every unjustifiable intrusion by the Government upon the privacy of the individual").  The Supreme Court recently explained, "Liberty protects the person from unwarranted government intrusions into . . . private places.  In our tradition the State is not omnipresent in the home. . . . Liberty presumes an autonomy of self that includes freedom of thought, belief, expression, and certain intimate conduct."  Lawrence v. Texas, 539 U.S. 558, 562 (2003); see also Whalen v. Roe, 429 U.S. 589, 599–600 (1977) (explaining that the right of privacy generally involves either "the individual interest in avoiding disclosure of personal matters" or "the interest in independence in making certain kinds of important decisions").

Even if "certain intimate conduct" is protected as a liberty/privacy right, the exact contours of that right are unknown and identifying the precise standard of review to be applied to the government's interference with that right can be formidable.  For example, in Lawrence the Supreme Court struck down a Texas statute criminalizing homosexual sodomy because the "statute further[ed] no *legitimate state interest* which can justify its intrusion into the personal and private life of the individual."  539 U.S. at 578 (emphasis added).  This language implies that the Court applied a rational-basis standard of review instead of a strict-scrutiny standard, inferring that the right to engage in homosexual sodomy is not a fundamental right.  Id. at 586 (Scalia, J., dissenting) (asserting that the Court struck down the sodomy statute by applying rational-basis review and without holding that the right to engage in homosexual sodomy is a fundamental right).  Approximately

one year before the Supreme Court decided <u>Lawrence</u>, the Arkansas Supreme Court held "that the fundamental right to privacy implicit in our law protects all private, consensual, noncommercial acts of sexual intimacy between adults." <u>Jegley v. Picado</u>, 80 S.W.3d 332, 350 (Ark. 2002) (explaining that although the Arkansas Constitution does not explicitly guarantee a fundamental right of privacy, such a right is implicit in various provisions of the Arkansas Constitution and in various statutes, rules, and precedent). Classifying this privacy right as a fundamental right, the court applied strict scrutiny to determine the constitutionality of a state statute criminalizing homosexual sodomy: "When a statute infringes upon a fundamental right, it cannot survive unless a compelling state interest is advanced by the statute and the statute is the least restrictive method available to carry out the state interest." <u>Id.</u> (citation, quotations and alteration omitted). Because no compelling state interest justified the sodomy statute, the court ruled that the statute was unconstitutional. <u>Id.</u>

Sylvester asks us to extend the principles developed in <u>Lawrence</u> and <u>Jegley</u> to hold that he has a fundamental right to engage in the conduct at the heart of this case. To our knowledge, no court has held that a police officer has a fundamental privacy right that precludes a police department from investigating a citizen's complaint that the officer had sexual relations with a crime victim during the course of the investigation involving that victim.[6] In our view, however, we need not determine

---

[6]Our review of numerous cases involving police-department investigations of their members' sexual conduct reveals that police officers generally have a right of privacy in their private sexual relations. Courts have not, however, applied the same standard of review when analyzing the constitutionality of police-department investigations into this behavior. <u>See, e.g.,</u> <u>Fugate v. Phoenix Civil Servs. Bd.</u>, 791 F.2d 736, 741 (9th Cir. 1986) (applying rational-basis review to reject a police officer's privacy claim where the officer's sexual behavior was not private, compromised the officer's performance, and threatened to undermine the police department's morale and reputation); <u>Shawgo v. Spradlin</u>, 701 F.2d 470, 483 (5th Cir.) (applying rational-basis review to hold that a police department's prohibition of off-duty dating and cohabitation did not violate police officer's privacy rights), <u>cert.</u>

-11-

whether Sylvester's sexual conduct is protected as a fundamental privacy right because we would reach the same result applying either the strict-scrutiny standard of review or the rational-basis standard of review. Therefore, we will simply assume, without deciding, that the fundamental right to privacy under either the United States Constitution or the Arkansas Constitution encompasses Sylvester's conduct. Based

denied, 464 U.S. 965 (1983); Thorne v. City of El Segundo, 726 F.2d 459, 468–71 (9th Cir. 1983) (applying heightened level of scrutiny to hold that police department violated a job applicant's right of privacy by investigating her private, off-duty, non-job-related, sexual affair with a police officer), cert. denied, 469 U.S. 979 (1984); Briggs v. N. Muskegon Police Dep't, 563 F. Supp. 585, 590–91 (W.D. Mich. 1983) (applying heightened scrutiny to hold that police department violated a police officer's privacy rights by investigating the officer's off-duty, adulterous affair that did not affect the officer's job performance); Jackson v. Howell, 577 F. Supp. 47, 50–51 (W.D. Mich. 1983) (applying rational-basis review in case involving facts similar to those in Sylvester's case to conclude that a police department does not violate an officer's privacy rights by investigating the officer's off-duty sexual relations with a person he met while on duty because the police department "has an interest in seeing that its officers do not use their official positions to solicit female complainants"); Shuman v. City of Philadelphia, 470 F. Supp. 449, 460 (E.D. Pa. 1979) (conceding "that the Police Department has an interest and may legitimately investigate some areas of personal, sexual activities engaged in by its employees where those activities impact upon job performance," but stating that "investigations which exceed the bounds set by the legitimate needs of the [Police] Department trample upon [a police officer's] constitutionally protected zones of privacy"); Fabio v. Civil Serv. Comm'n, 414 A.2d 82, 84, 89–90 (Pa. 1980) (applying strict scrutiny to hold that police department's investigation of a police officer's off-duty sexual relations with his wife's eighteen-year-old sister did not violate the officer's privacy rights). But see Marcum v. McWhorter, 308 F.3d 635, 643 (6th Cir. 2002) (holding that a deputy sheriff's "decision to enter into an intimate, sexual relationship and cohabitation with a married woman is [not] a fundamental right deeply rooted in the Nation's history and tradition or implicit in the concept of ordered liberty" such that it enjoys constitutional protection).

-12-

on that assumption, we will apply strict scrutiny to the ASP's investigation of Sylvester's sexual relations with Mrs. Hawkins.[7]

The strict-scrutiny standard is a familiar one. To survive strict scrutiny, the defendants must show that their investigation of Sylvester's sexual relations with Mrs. Hawkins "advances a compelling state interest and is narrowly tailored to serve that interest." Republican Party of Minn. v. White, 416 F.3d 738, 749 (8th Cir. 2005), cert. denied, 126 S. Ct. 1165 (2006). We conclude that the defendants have met both prongs of the strict-scrutiny standard.

First, we conclude that a police force has a compelling interest in precluding a criminal investigator from having sexual relations with witnesses or victims involved in an underlying criminal investigation. The criminal-justice system—a bedrock of our democracy—must maintain the public's respect and trust. The public places special trust in criminal investigators because these officers are responsible for collecting evidence that might deprive a citizen of his life, liberty, or property. Citizens have the right to expect that criminal investigators are impartially investigating crimes as neutral, detached fact-finders and not abusing their positions of trust. Justice cannot be achieved when state agents place their personal interests above the public's trust.

To advance the fair and unbiased administration of justice, criminal investigators must respect the rights of those suspected of committing a crime. A person under investigation would certainly be interested in knowing whether the state's investigator is having sexual relations with the alleged crime victim and chief

---

[7]We recognize that the Supreme Court in Kelley v. Johnson, 425 U.S. 238, 240–41, 247–48 (1976), applied rational-basis review to uphold a police-department regulation limiting the style and length of police officers' hair against a right-of-privacy claim. Because the standard of review does not dictate the outcome of Sylvester's appeal, we will err on the safe side by applying strict scrutiny here.

accuser. If a criminal investigator freely engaged in sexual relations with the victims and witnesses involved in the underlying investigation, claims by criminal defendants of unreliable evidence and false accusations would be plentiful. The investigator's and the victim's or witness's credibility would be impugned by the sexual relations. As demonstrated by the testimony of the ASP officials and the state prosecutor in this case, Sylvester's credibility was damaged in exactly this manner. An employee suspected of embezzling $300,000 from a family-owned business will never be brought to justice because Sylvester's conduct compromised the prosecution.

The police force has another compelling interest in prohibiting sexual relations between criminal investigators and crime victims: victims should be confident that police officers are striving to bring perpetrators to justice and are not exploiting crime victims. A criminal investigator permitted to have sexual relations with crime victims could use his authority to sexually exploit those victims. See, e.g., Jackson v. Howell, 577 F. Supp. 47, 48 (W.D. Mich. 1983) (noting that a crime victim "expressed some concern for her safety because she had been having an affair" with a police officer who was investigating her case). Even the possibility of such exploitation is intolerable.

Finally, Sylvester claims that he was constitutionally entitled to be free from an investigation by his employer into his sexual relations with Mrs. Hawkins because the embezzlement investigation had been or was nearly completed at the time. This is an unfortunate and naive view of an investigator's role in the prosecution of a criminal defendant. As explained by Melton, a criminal investigator's work does not end until the prosecution of the case ends. The state has a compelling interest in ensuring that the integrity of criminal prosecutions is never questioned because an investigator engaged in sexual activity with a witness or victim involved in the underlying criminal investigation.

-14-

Second, we conclude that the ASP's investigation of Mr. Hawkins's allegations was narrowly tailored to serve the state's compelling interest in administering a fair and unbiased criminal-justice system. The ASP's investigation focused on whether Sylvester had sexual relations with a crime victim while in the process of conducting a criminal investigation involving that victim. The ASP limited its investigation to conduct that could interfere with Sylvester's work performance and that could negatively impact the ASP's mission of providing essential governmental services. Cf. Thorne v. City of El Segundo, 726 F.2d 459, 471 (9th Cir. 1983) (holding that police department's investigation of the private, off-duty sexual activities of an applicant for a position with the department was not narrowly tailored to meet the police department's interests because there was no showing that such activities impacted the applicant's work performance); Swope v. Bratton, 541 F. Supp. 99, 108 (W.D. Ark. 1982) (explaining that a police officer has a right to engage in sexual activities free from governmental intrusion unless those activities interfere with the officer's "work performance or the efficiency of the governmental service").

The ASP was not interested in learning about Sylvester's private, non-job-related sexual activity. The ASP became interested in Sylvester's sexual activity only when a crime victim in an embezzlement case complained that Sylvester's sexual relations with the other crime victim in the same case were damaging the case. As the District Court explained, Sylvester's sexual activity was job-related. Sylvester met Mrs. Hawkins after he was assigned to investigate the embezzlement case. While on duty in his office, Sylvester talked to Mrs. Hawkins about her case and told her that he needed documents essential to the investigation. The pair arranged to have Mrs. Hawkins deliver the documents to Sylvester's home. It was during this visit that Sylvester and Mrs. Hawkins had sexual intercourse. The ASP's investigation of this

-15-

job-related conduct was narrowly tailored to serve the ASP's compelling interest in maintaining the integrity and effectiveness of the criminal justice system.[8]

## III.

For the reasons discussed, we affirm the District Court's grant of summary judgment to the defendants.

LOKEN, Chief Judge, concurring in the result only.

_____

---

[8]Because we conclude that Sylvester's constitutional rights were not violated, we need not and do not address the District Court's qualified-immunity holding.